## Babcock *versus* Case.

| 61 | 427 |
|-----|------|
| 155 | 357 |

| 61 | 427 |
|----|------|
| 25 SC | ⁵392 |

| 61 | 427 |
|-----|------|
| 212 | ⁵579 |

1. Babcock held a treasurer's deed, and represented to Case that he had examined the title and found all right and that the title was good; Case saying he would take Babcock's word for it, bought the land without examination. *Held*, that there was a relation of trust and confidence, and Babcock was bound to exhibit the truth as it existed.

2. Babcock's ignorance of the facts, he having undertaken to state them truly, would not redeem a falsehood in any material matter from being a fraud that would avoid the contract.

3. As a general rule, where there is an executed contract to recover back the purchase-money on the ground of defect of title, an action cannot be maintained without the tendering a reconveyance.

4. Rescission on the ground of fraud, failure of consideration, &c., is a right in equity to a restoration of the consideration, and the party claiming the restoration must return the property attained or reconvey the title.

5. If the thing, the consideration of which is sought to be recovered back, be entirely worthless, there is no duty to return it.

6. A condition in the verdict to reconvey would do equity.

7. After verdict, if it appear that a reconveyance ought to be made, the court can restrain execution until it be made.

March 23d 1870. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Warren county:* No. 108, to January Term 1869.

This was an action of assumpsit brought March 21st 1867 by Howard J. Case against Jerome Babcock, to recover the sum of $500, being the consideration paid by the plaintiff to the defendant for land for which the defendant had no title.

The case was tried below, September 18th 1868, before Johnson, P. J.

The plaintiff gave in evidence a deed from the treasurer of Warren county, dated June 11th 1860, to P. Falconer, for 130 acres of land in Deerfield township, "tract No. 164," sold for taxes; assignment January 23d 1865, endorsed Falconer to plaintiff, January 30th; assignment endorsed defendant to plaintiff for one-half the tract "for a valuable consideration." The plaintiff gave evidence that the land was seated and that no title passed by the treasurer's sale. The amount of consideration paid was $500. The defendant resided about thirty-five miles from the land.

L. D. Elsworth testified that the defendant came to plaintiff's store in the winter of 1865 and proposed to sell him one-half of the tract, which he said had been sold for taxes. Plaintiff asked if it was a good title. Defendant said he had been to Tideoute, had hunted up the title and found it all right.

Frank Case, who was present at the same interview, testified in the same manner, and also that the plaintiff said to the defendant that he would have to take the plaintiff's word for it.

J. Haggarty testified substantially as Case.

R. H. Morrison, who lived at Tideoute, testified that in the winter of 1865 the defendant came to him to learn about the land; said he had a treasurer's deed for it. Witness showed him that the land was seated, and that he could not have a good title.

The defendant gave evidence tending to show that the plaintiff expressly took the risk of the title; that the defendant was ignorant of the state of the title, &c.

He also made the following offers of evidence, which were objected to by the plaintiff, rejected by the court and several bills of exception sealed:—

1. That after plaintiff had the same knowledge of the facts relating to the sale of the land and its situation as the defendant had, he still retained the title and endeavored to sell the same, refusing larger offers than he had paid for it.

2. That the land in question was known as oil-land, and as such its current value at the time of the sale from defendant to the plaintiff, with a good and indisputable title, would have been more than ten times the price paid by plaintiff to defendant for the same.

3. That plaintiff said that in the summer of 1865 he had the land in question in the New York market, and could sell it for $50,000, if he could make an indisputable title for it.

The defendant submitted the following points:—

1. After plaintiff had an opportunity to discover the defects in the title, then it was his duty to tender the reconveyance of the land to defendant and rescind the contract, and, so far as he reasonably could, place the parties in *statu quo* before bringing suit for the purchase-money; and not having done so up to the bringing of this suit, he has affirmed the sale, even though originally tainted with fraud.

2. That to sustain an action under the pleadings and facts in this case, it was necessary for plaintiff to tender to defendant a reconveyance of the land prior to commencing suit.

3. The treasurer's deed to Patrick Falconer being based on the assessments and records in the office of the county commissioners, which were equally accessible to both plaintiff and defendant, the same was notice to plaintiff of any defects in the title as indicated by said assessments and records, unless the defendant made a statement as to the same which was not true, and plaintiff accepted and acted on such statement as true, and was prejudiced thereby.

The court answered:—

"The 1st and 2d points are answered in the negative.

"The 3d point states the law correctly as an abstract proposition; but it is not in regard to the title, or anything good or bad exhibited by the records, that is the subject of complaint. It was the want of land, not the want of a regular title."

[Babcock v. Case.]

The court, after referring to the facts and commenting on them, further charged :—

* * "So far the records and facts were calculated to mislead.

" The question then is, did the defendant afterwards and otherwise learn that he had been deceived and got what was of no value, and then to retrieve himself from the dilemma go and impose it on the plaintiff as a valuable thing ?

" The only evidence of the time and manner in which Babcock acquired such information is given by Esquire Morrison, and contained in the declaration of Babcock, as proved by the plaintiff's witnesses.　You will therefore have to examine closely the testimony of Esquire Morrison, and judge whether it proves to your satisfaction that the defendant was then and there apprised and made fully aware that he had no land.　You have also some declarations of the defendant as to the examinations he had made into the validity of his title.　You must judge from all this whether the defendant was aware, either by his examinations of Esquire Morrison and the assessments, or from any other source, that his title was worthless, and whether he withheld his knowledge of the facts thus acquired, and by a representation of a title, fair on its face, or direct verbal representations that he had examined or hunted it up and found it all right, induced the plaintiff to purchase and pay his money for what was worthless; and if so, the plaintiff would be entitled to recover back his money and interest upon it.　Ignorance is a good excuse against a charge of fraud in a case like this, if you are satisfied the defendant acted ignorantly, and not dishonestly and falsely.

" Then again, if the plaintiff knew the facts as well as the defendant, and was buying the land with the hope of being able, during that period of excitement, to sell it to some speculator at an advance on his purchase, and thus knowing the facts, agreed to take the title at his own risk, then the plaintiff ought not to recover anything.

" You must judge of the credibility of the witnesses, and reconcile the whole if possible."

The verdict, September 20th 1868, was for the plaintiff for $609.17.

The defendant took a writ of error.　His assignments of error were the rejection of his offers of evidence and the answers to his points.

*L. D. Wetmore* (with whom were *Wilbur* and *Allen*), for the plaintiff in error.—The contract was voidable not void, and if Case wished to rescind it he should have given Babcock notice as soon as he found the defects : Pearsoll *v.* Chapin, 8 Wright 14. The deed to Babcock being a treasurer's deed and assigned to Case, pointed him to the time by which he could ascertain there was no

[Babcock *v.* Case.]

title, it was therefore his own folly to take it: Keer *v.* Kitchen, 7 Barr 486; Hill *v.* Epley, 7 Casey 336; Hood *v.* Fahnestock, 1 Barr 474; 1 Story's Eq. § 197, n. 3; Crest *v.* Jack, 3 Watts 240; Knouff *v.* Thompson, 4 Harris 364; Kintzing *v.* McElrath, 5 Barr 469.

*R. Brown,* for defendant in error, cited Flynn *v.* Allen, 7 P. F. Smith 482.

The opinion of the court was delivered, May 12th 1869, by

THOMPSON, C. J.—The plaintiff in error, Babcock, sold the land which gave rise to this controversy to the defendant in error, at the distance of some thirty-five or forty miles from its alleged location. There was testimony to show that he represented the title as good; that it was a tax title; that he had bought from Mr. Falconer, and had been to Tideout, where the land lay, and looked it up, and found it all right. Of course, this was equivalent to saying that the land was unseated and subject to be sold for taxes at the time the taxes for which it was sold had been last assessed. There was also testimony that the defendant in error said, if he bought the land he would have to take his (Babcock's) word for it, that the land and title were as he represented, and that on these terms the sale took place. The jury believed this evidence, and found against the defendant below on the ground that he misrepresented the true state of the land, when he was bound in good faith to represent it exactly as it was, the plaintiff below declaring himself a stranger to it, and relying on his representations. Under such a state of facts, there was a relation of trust and confidence between the parties, and the seller was bound to exhibit the truth of the case as it existed, whether he knew them or not. That is to say, his ignorance of them, having undertaken truly to state them, would not redeem a falsehood in regard to them in any material matter, from being a fraud, and a fraud that would avoid the contract. All this was sufficiently explained to the jury by the learned judge below.

The plaintiff's case below depended on showing the worthlessness of the defendant's conveyance. This he succeeded in doing. But it is alleged that the plaintiff was not entitled to try that question until after a reconveyance made or tendered to the defendant.

As a general rule, in the cases of executed contracts, this is true. Rescission on the ground of fraud, failure of consideration and the like, is a right in equity subject to a restoration of the consideration; consequently, in order to obtain equity, it lies on the party seeking it to do equity; that is to say, he must return the property obtained, or reconvey the title. If this be the equitable requirement, a failure in that particular would ordinarily be fol-

[Babcock v. Case.]

lowed by a denial of the equity demanded. But if the thing, the consideration for which is sought to be recovered back, be entirely worthless, there would be no duty to return it. This we held in Flynn v. Allen, a case from Potter county, 7 P. F. Smith 482. We decided that the return of the worthless township orders bought by the plaintiff from the defendants, was not essential to the plaintiff's right of recovery. As nobody can have an equity in a thing worthless in itself, it must follow that the restoration of such a thing will not be required in equity. Wherever the question of restoration arises, it is an equitable question, and is to be dealt with on equitable principles. If there be no value in a conveyance, for instance, and no right of recourse on any one on a reconveyance, would the want of such a reconveyance having been tendered outweigh a plaintiff's equity to have his money back, who had been egregiously defrauded? If it would not, a reconveyance would not be required. It is only required in order to prevent the party holding the thing paid for, and recovering the price, also, that a return is essential in equity. If the thing be worth nothing, of what consequence is a reconveyance or return of it?

The defendant below did not show that a reconveyance by the plaintiff to him would be of any value. What equity had he to have it therefore? It must be remembered that if the plaintiff was defrauded, it avoided the conveyance, and his right was complete to his money. It never lawfully passed out of him. The right to have it again depended on what might appear in the defence. He could not know that the defendant would insist on a reconveyance of a worthless title, and was not bound to make a reconveyance, or tender one. If any value appeared in it, however, a condition to reconvey in the verdict would effectually do equity in the premises. Indeed, after verdict, if it should come to light that a reconveyance ought to be made, it is within the equitable power of the court to restrain execution until it be made. In all cases, therefore, the equity of the defendant is to be judged of and administered, if it be an equity at all, and if it be not, the claim goes for nothing. If equity requires a reconveyance to precede suit, it will be so administered; if it can be protected on the trial as it may in almost every possible case, it will be so administered. If there be no equity in the case, but only an assumption of it, it ought to be disregarded. That was the category, it seems to us, in which the defendant's claim to equity stood. Should the court below be of opinion, however, that justice demands a reconveyance to be made to the defendant, it might restrain the execution until it be made.

The action is at common law, but still it is an equitable action; contemplating it in this light, the rights and duties of the parties are more easily perceived, and as they strike us, we have stated them. We do not impinge on the case of Pearsoll v. Chapin, 8

[Babcock *v.* Case.]

Wright 12. That case was well decided on its facts. We think there was, therefore, no error in the ruling of the learned judge upon the defendant's 1st and 2d points.

Nor do we consider there was error in the answer to the third point of the defendant. It was true in law, if the fact were so, that if there was no land unseated to which the treasurer's deed was applicable, the conveyance may have been regular, but it operated on nothing. The court committed no error in telling the jury so. It was their business to say how the fact was, and they have said so. The other branch of the point was affirmed.

There are several errors to which no arguments were addressed, but we have considered them, as requested in the oral argument, and see nothing whatever to correct in the rulings of the learned judge in regard to them.

It was proposed to prove on the part of the defendant that the price at which the land was sold, was so inadequate to its value, if oil territory, that an inference ought to have been drawn by the jury, that the plaintiff took the risk of the title. Such was by no means a legitimate inference. It was not known to be oil territory, and the risk of this may have been the inducement to offer it at so low a figure. The testimony would be ineffectual unless it would raise a presumption contrary to the express facts, and sufficient to overturn them as proved by the witnesses, that the defendant represented the title as good, and he knew it, and that the plaintiff said he would rely on his word and take it. The proposed testimony was susceptible of other inferences, and not necessarily those claimed; in fact not possible, in view of the evidence in the case. There was no error therefore in this, nor in any other part of the case, and the judgment is affirmed.