## ALFRED E. ELY *vs.* MONROE STANNARD.

The defendant had taken the plaintiff's note for $1,200 and a mortgage to secure it, and transferred the note to a third person, retaining the legal title under the mortgage. The plaintiff conveyed the equity of redemption in the mortgaged land to *H*, it being understood that *H* was not to assume the mortgage debt. *H* afterwards applied to the defendant to release the mortgage so that he could convey the land free from encumbrance to *W*, and by fraudulent collusion with *H* the defendant released to him the mortgage, receiving from him $200 for doing it. *H* then conveyed the land to *W*, who bought in good faith and with no knowledge of the fraud, and paid *H* the full value. The plaintiff was amply responsible, and there was no way by which he could escape payment of the $1,200 note or get the benefit of the original security. In an action against the defendant for the fraud, it was held—

1. That it was no defence that the plaintiff had a right of action against *H* for the $1,200 received by him of *W*.

2. That the defendant was liable for the full damage sustained by the plaintiff, although he had received only $200 of the $1,200.

3. That although the plaintiff had not paid the note when the suit was brought, yet as it was inevitable that he would have to pay it, and he had since paid it in full, he was entitled to recover full and not mere nominal damages.

While it is a general rule that a mere liability is not sufficient to support an action, yet the rule does not apply where such liability is coupled with a legal obligation from which there is no escape.

ACTION on the case for fraud; brought to the Superior Court in Hartford County, and tried to the court on the general issue. Facts found and case reserved for advice. The facts are sufficiently stated in the opinion.

*C. E. Perkins*, for the plaintiff.

*G. G. Sill*, for the defendant.

CARPENTER, J. In July, 1873, the plaintiff was indebted to the defendant in the sum of twelve hundred dollars by note payable in eighteen months to the order of the defendant with interest. In April, 1874, the plaintiff, being desirous of exchanging certain lands owned by him subject to a mortgage to secure the note, for an equity of redemption in certain other lands owned by Lester S. Hills, without the knowledge of the defendant executed a mortgage of his land to the defendant to secure the note, and delivered it to the town clerk to be recorded, intending thereby to render the mortgage a valid conveyance. The plaintiff then made the exchange with Hills, treating the mortgage as valid, and taking it into account as such, but it was expressly agreed that neither of them should personally assume the mortgage upon the property so conveyed to each of them respectively.

Before the maturity of the note the defendant sold it to a bonâ fide purchaser for value. When it fell due the plaintiff was called upon to pay it, and after the commencement of this suit, but before the trial thereof, paid it.

While the note was so outstanding in the hands of a third person, the plaintiff requested the defendant to transfer the mortgage to him, or to some one for his benefit, to protect him upon his payment of the note; but he refused so to do. Afterwards, and while the note was still outstanding in the hands of the third person, Hills applied to the defendant, and requested him to release the mortgage to one White, to whom he had contracted to sell the property free of the mortgage. The defendant at first refused, but finally did so, Hills paying him therefor the sum of two hundred dollars.

White received a conveyance of the property in good faith and without knowledge of the circumstances, and paid Hills therefor the amount which the mortgage was so given to secure, which he would not have done if the mortgage had not been released. The defendant, when he released the mortgage, knew that the note secured thereby was still outstanding and unpaid.

The case is reserved for the advice of this court as to the judgment to be rendered upon these facts.

The result of this transaction was to take from the plaintiff the amount of the note, and place two hundred dollars of it in the hands of the defendant, and the balance in the hands of Hills. The plaintiff is without redress unless he can recover in some form, either of the defendant or Hills.

. We can entertain no doubt that it was a fraud upon the plaintiff, and so intended by both Hills and the defendant. But the defendant claims that he is exempt from liability because under the circumstances the plaintiff may maintain an action against Hills for money had and received. This may be so. Whether it is or not we will not now stop to inquire. Allowing it to be so, it is difficult to see how that exonerates the defendant, or saves him from the consequences of his fraud. If two parties conspire together to defraud another, and suit is brought by the injured party against one, it is no defense that the plaintiff may have a remedy in an action of contract against the other. Admitting that he may have an action for money had and received, that does not deprive him of his right to bring suit against either or both of the fraudulent conspirators. The question therefore of the solvency or insolvency of Hills is immaterial.

The defendant further claims that the plaintiff cannot recover the amount of the note, for the reason that the note had not been paid when the suit was commenced. This claim assumes that the plaintiff sustained no injury until the actual payment of the note; that until that time it was fraud without damage. But if the wrongful act of the defendant when consummated was an invasion of the plaintiff's legal rights, a cause of action at once existed, and in that state of things the plaintiff might recover at least nominal damages, and if the note was paid by the plaintiff before the trial, then he would be entitled to recover full damages.

We think that the act of the defendant was an invasion of the plaintiff's legal rights. When the defendant released this mortgage to White, Hills received from White, in excess of the amount he was entitled to receive and of the amount he otherwise would have received, just the amount which was then due on that note. That amount belonged to the plaintiff.

It was the equivalent of a fund which he had set apart for the payment of this note, and which he had a perfect legal right to insist should be used for that purpose. But the defendant and Hills by a disreputable device diverted the fund from that purpose and put the money into their own pockets. It matters not that the defendant received but two hundred dollars. He knew that he was receiving that much more than he was entitled to, and knew that he was fraudulently taking that much from the plaintiff. He stands no better in the eye of the law than he would if he had taken every dollar of it. The fraud was consummated so far as he was concerned, and he had received the full benefit of it. We might stop here and remark that it does not come with very good grace from him to insist, notwithstanding that the fraud is complete, and has yielded its fruit as to himself, that it is not complete as to the plaintiff, he not yet having paid the note, although payment by the wrongful act of the defendant is inevitable.

If the plaintiff is not yet damnified no one is. White certainly is not, for he received just what he purchased and paid for. The holder of the note is not, for the plaintiff, a responsible man, is his debtor. The defendant's claim therefore involves this absurdity, that although he has committed a fraud and received the fruits of it, yet no one is injured. This cannot be. Either the maker or the holder of the note is defrauded. It is certain that one of them must suffer, and as the maker is solvent there is no uncertainty as to which it will be. For all practical purposes therefore the plaintiff suffered damage from the moment the fraud was consummated.

This must be so. The plaintiff's liability was not contingent but absolute. If it had been contingent, if there had been any legal uncertainty about his being called upon to pay it—for instance, if the security had been outstanding so that the holder of the note could have resorted to that for payment—and the wrong had been of such a character as to leave the liability contingent, the case would have presented a different question. In that event the holder might have collected the note from the security and the maker would

have suffered no damage.  But unfortunately the wrong destroyed the security, and converted a contingent liability into an absolute one.  After the defendant sold the note he might at any time, while holding the security, have been compelled to transfer it to the purchaser.  When the mortgage was released and the property conveyed to White unincumbered, he purchasing in good faith and paying therefor its full value, it was no longer possible for the holder to look to the security.  He could only resort to the maker, and for all practical purposes it was certain that he would do so.

One more consideration.  The plaintiff was owing this note, and set apart a portion of his property to provide a fund for its payment.  The defendant, colluding with another, has benefited himself by destroying that security, leaving the plaintiff to pay the debt, thus damaging him to the exact amount of the note.  The effect is precisely the same as it would have been if the plaintiff had set apart personal property—government bonds for instance—to be sold and the avails applied in payment of the note, and the defendant had wrongfully converted that property to his own use; or if he had deposited money for its payment, and the defendant had fraudulently obtained it and converted it to his own use.  In the two cases supposed no one would doubt the defendant's liability.  We see as little reason to doubt it in the case we have before us.

Security for a debt is property; it may be of little value or it may extend to the full amount of the debt.  The law presumes that it is of some value.  If that is wrongfully destroyed the creditor may maintain an action for nominal damages, at least, irrespective of the responsibility of the debtor.  If, as between the debtor and a wrong-doer, the debtor has a right to have the debt paid from the security, and the wrong-doer destroys the security for his own advantage, he is immediately liable to an action for nominal damages if for no more.

We do not intend to infringe the rule that a mere liability to loss is not ordinarily sufficient to maintain an action; but we think the rule does not apply when such liability is coupled

with a legal obligation from which there is no escape. We think this position is sustained by the authorities. In an old case, *Waterer* v. *Freeman*, Hobart, 266, Lord Hobart, C. J., says:—"There must be not only a thing done amiss, but also a damage either already fallen, *or else inevitable.*" "There would be neither wisdom nor justice in compelling a defendant to pay the plaintiff money as compensation for a loss which he has not incurred, and may never sustain. These remarks of course do not apply where a liability has attached that may fairly be regarded as inevitable, and sure to be responded to by the party charged." Sedgwick on Damages, 229. Again, on the same page, the author says:—"A mere probability of future loss is an insufficient basis of a claim for legal relief. But the case may be different where the plaintiff is fixed with a legal liability to lose, which, consummated, the defendant will be bound to make good."

Our conclusion then is that the plaintiff had a complete right of action when this suit was commenced; and, inasmuch as the note was paid before trial, he is entitled to recover the full amount of the note.

The Superior Court is advised to render judgment accordingly.

In this opinion the other judges concurred.