# GANNON, GOULDING & THIES v. HAUSAMAN.

### No. 3621.  Opinion Filed April 17, 1914.

### (140 Pac. 407.)

1. **FRAUD—Sale of Land—Right of Action.**  Where a person has been induced through the fraud and false statements of another, to purchase property as clear, which in fact is incumbered by a valid enforceable lien, such defrauded person, in an action for damages because of the fraud and deceit, may recover the amount of the incumbrance by way of damages, except as it may exceed the value of the property, and without having suffered a foreclosure, ouster, or having paid it off, because he ought to be considered presently damaged in a sum which the fraud of another has made it inevitable he shall pay to protect his property.

2. **SAME—False Representations—Knowledge.**  A false and fraudulent representation, by one who assumes to have personal knowledge to the purchaser of real estate that there is no incumbrance thereon, upon which representation the purchaser relies and acts to his injury, will sustain an action for the tort, although the purchaser might have discovered the fraud by searching the public records.  A man cannot state falsely to another in such cases and then complain because he was believed.

3. **PARTNERSHIP—Fraud of Partner—Exchange of Land—Liability.**  Where one partner, while acting for the firm, makes an exchange of lands by means of false representations, the other partners are liable for the fraud, though they personally take no part in the transaction, and are ignorant of the fraud.

(Syllabus by Brewer, C.)

*Error from County Court, Garfield County;*
*Winfield Scott, Judge.*

Action by Effie D. Hausaman against Gannon, Goulding & Thies.  Judgment for plaintiff, and defendants bring error.  Affirmed.

*Rush & Smith,* for plaintiffs in error.

*Parker & Simons,* for defendant in error.

Opinion by BREWER, C.  The defendant in error sued the plaintiffs in error in the county court for damages alleged to have occurred because of fraud and deceit and false and fraudulent statements made by defendants in regard to a land trade.

After alleging that defendants, Gannon, Goulding & Thies, compose a partnership, engaged in the real estate, loan, and abstract business, and that in such capacity they negotiated with her the terms of a trade by which she exchanged certain lands for city real estate, she avers:

"That plaintiff thereupon, and by and through her duly authorized agent, R. J. Hausaman, demanded of the said H. W. Thies, one of said defendants, and who was acting as agent in said transaction for the said Catherine King and J. J. King, an abstract of title to said lot No. 11 of block No. 7, above described; and plaintiff alleges: That, in and about the making of said transfer and all matters pertaining thereto, the said defendants were the duly authorized agents of the said Catherine King and J. J. King. That plaintiff objected to closing said deal until she was furnished with an abstract as provided for by said contract, a copy of which is hereto attached, marked 'Exhibit A,' and made a part hereof, and which said abstract was to show that said real property that was being conveyed to her was free and clear of all taxes, assessments, etc., and had a clear title except for the incumbrance of $1,600 above referred to. That thereupon, and for the purpose of inducing the said plaintiff to close said deal and accept the transfer of said property without said abstract, said defendants personally, and also by and through the said H. W. Thies, stated to this plaintiff that the said H. W. Thies knew that said property was free and clear of all liens, incumbrances, assessments, and charges of every kind whatsoever, and had a perfect title save and except for the mortgage of $1,600 above referred to, and the said defendants and the said H. W. Thies stated to the plaintiff and her said agent, R. J. Hausaman, that he, the said H. W. Thies, was a bonded abstractor and engaged continually in the making of abstracts, and that he was familiar with the title of this particular piece of property, and that the abstract which had originally been made to this property was in the hands of the loan company that had said $1,600 mortgage on it, and that he would in a few days prepare a new abstract for plaintiff to said property, and that said abstract would show that said property was free and clear of all liens and incumbrances of whatsoever nature save and except said mortgage of $1,600, and that plaintiff would be perfectly safe in accepting said transfer in reliance upon his statements, and in furtherance of said design to deceive plaintiff and her agent, R. J. Hausaman, said H. W. Thies took the said R. J. Hausaman to the courthouse in the city of Enid and pretended to show him certain books and records

the nature of which the said R. J. Hausaman did not understand, which the said H. W. Thies claimed and pretended to the said R. J. Hausaman showed that said property was free and clear of incumbrances, taxes, and liens of every kind save and except said $1,600 mortgage. That, by reason of the fact that the said H. W. Thies and the said defendants were engaged in the business of making abstracts, and of the positive and affirmative statements made to the said plaintiff and her agent, R. J. Hausaman, by the said defendants and the said H. W. Thies, that he knew the said property was free and clear of incumbrances save and except said $1,600 mortgage, and, upon their promise and assurance that within a few days he would make said abstract which should show said facts and furnish it to the plaintiff, and in reliance upon said representations and statements, the plaintiff consented to close said deal," etc.

She then avers the exchange of deeds; the one she received having been written by Thies, and stipulating there was no incumbrance save the one for $1,600, etc. That in fact there was another mortgage for $380 and accrued interest. That she would not have made the trade but for her reliance and faith in the positive representations and statements made to her. That the statements were false and untrue and were made to induce the plaintiff to exchange and deed her property, and part with the title thereto, before she could learn of the incumbrances which had been concealed, etc. She then avers that the defendants were to receive for their services a commission of 2½ per cent. to be paid by her on the value of her property, etc. Answers were filed in which the partnership was denied under oath, and all other allegations denied generally, etc. On the issues thus formed the case was submitted on the evidence to a jury, and a verdict was returned in favor of the plaintiff for damages. Judgment was entered accordingly, and the cause comes here on case-made.

These questions are urged in the brief: First. That plaintiff failed to show in her petition or in her proof that she had been ousted or had paid out any sums on account of the incumbrance. Second. Questions growing out of the issue as to the partnership relation of defendants. Third. Error in certain instructions.

1. The first error urged is without merit. Counsel seem to be under the impression that this is a suit for breach of covenants against incumbrances contained in a deed, and that the damages would be governed by section 2892, Comp. Laws 1909 (Rev. Laws 1910, sec. 2857), which confine same to the "amount which has been actually expended by the covenantee in extinguishment of the principal, with interest thereof." Not so; this is not such a suit. It is one for deceit, and is predicated on the false and fraudulent statements of fact alleged to have been made by defendants, and upon which she relied and acted to her hurt.

Damages are allowed for a deceit practiced on a person. Section 1144, Comp. Laws 1909 (Rev. Laws 1910, sec. 993), provides:

"One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

Deceit is defined as follows in section 1145, Comp. Laws 1909 (Rev. Laws 1910, sec. 994):

"A deceit, within the meaning of the last section, is either: (1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true. (2) The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true. (3) The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact."

Actual fraud is defined by section 1052, Comp., Laws 1909 (Rev. Laws 1910, sec. 903), thus:

"Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: (1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true. (2) The positive assertion in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true. (3) The suppression of that which is true, by one having knowledge or belief of the fact."

See *Garvin v. Harrell*, 27 Okla. 373, 113 Pac. 186, 35 L. R. A. (N. S.) 862, Ann. Cas. 1912B, 744; *Howe v. Martin*, 23

Okla. 561, 102 Pac. 128, 138 Am. St. Rep. 840; *Newell & Ross v. Long-Bell Lumber Co.*, 14 Okla. 185, 78 Pac. 104.

The authorities are not in harmony on this proposition (A. & E. Ency. L. [2d Ed.] 145); but we think the better view is that, where a person has been induced, through the fraud and false statements of another, to purchase property as clear which in fact is incumbered by a valid enforceable lien, in an action for damages because of the fraud and deceit, the defrauded one may recover the amount of the incumbrances as damages, except as it may exceed the value of the property, without having suffered a foreclosure, ouster, or having paid it off, because a person ought to be considered damaged in a sum that it is inevitable that he must pay to protect his property. Therefore, if the defendants, or one of them so related as to bind them all, made statements purporting to be of facts within the knowledge of the speaker to induce this woman to part with her property and change her position, and such statements were false, and fraudulently and deceitfully made, and she relied upon and acted upon them to her injury, she was entitled to recover whatever damages she has suffered, and whatever, under the circumstances, it is inevitable that she shall suffer.

The jury found the facts in favor of plaintiff; we have only examined the evidence enough to know that it is in hopeless conflict. In such case we have no right to weigh it and substitute our judgment for that of the jury.

In the case of *Hahl v. Brooks*, 213 Ill. 134, 72 N. E. 727, which is a case very closely in point, the law of the case is stated in the syllabus as follows:

"Plaintiff desired to purchase unincumbered land and was told by one to whom the grantor referred him that the land was unincumbered save by taxes, and, when the deed was handed plaintiff, he asked the vendors' agent to read it; plaintiff not being able to read well. The agent read it, but did not read anything about a mortgage, to which the deed was made subject, and thereafter the grantor read it to plaintiff in the same way. *Held* to show that plaintiff relied on the false representations and was deceived by them. Where a vendee of land was deceived by false representations of the vendor that the land was not incumbered,

he could recover in an action for the deceit, although he had not removed the incumbrance, and although his title had not been swept away by it. In an action by the vendee of land against the vendor to recover damages for false representations of the vendor that the land was unincumbered, the measure of damages was the amount of the incumbrance, if less than the value of the land.."

*S. W. R. Co. v. Papot,* 67 Ga. 675; *Ely v. Stannard.* 46 Conn. 124; 20 Cyc. 135, and note 9.

Nor does the fact that the mortgage on the land was on record prevent the plaintiff from maintaining her suit. In *Carpenter v. Wright,* 52 Kan. 221, 34 Pac. 798, it is said:

"The contention that no recovery can be had because the incumbrance was a matter of record is not sound. A fraudulent representation by one who assumes to have personal knowledge to a purchaser of real estate that there is no incumbrance thereon, and upon which representation the purchaser relies and acts, to his injury, will sustain an action for the tort, although the purchaser might have discovered the fraud by searching the public records. *McKee v. Eaton,* 26 Kan. 226; *Curtis v. Stilson,* 38 Kan. 302 [16 Pac. 678]; *Matlack v. Shaffer,* 51 Kan. 208 [32 Pac. 890, 37 Am. St. Rep. 270]; *David v. Park,* 103 Mass. 501; *Bristol v. Braidwood,* 28 Mich. 195; *Babcock v. Case,* 61 Pa. 427 [100 Am. Dec. 654]; *Linn v. Green,* 5 McCrary, 380 [17 Fed. 407]."

In 14 A. & E. Ency. L. (2d Ed.) at page 130, it is stated in the text:

"By the weight of authority, a representation by the vendor, lessor, or mortgagor of real property, or by a third person, as to the title to the property, or as to the existence of incumbrances thereon, if it does not amount to a bare assertion that the party has a good title, but is made as a positive statement of fact, and with the intention that it shall be relied upon, may be relied upon without further inquiry by the person to whom it is made; and this is particularly the case when the latter has not equal means of knowledge, or when there is a relation of confidence between the parties."

And in the same volume at page 132 the general rule is stated to be:

"By the decided weight of authority, where a positive representation is made by the vendor, mortgagor, or lessor of real or personal property, or by a third person, as to the title, incum-

brances, boundaries, location, etc., with a view that it shall be relied upon, ordinary diligence does not require that the other party shall examine the records to test the truth of the representation, if no fact or circumstances is disclosed which is calculated to suggest a doubt as to the truth of the representation, and thus to put him on inquiry."

*Backer v. Pyne*, 130 Ind. 288, 30 N. E. 21, 30 Am. St. Rep. 231; *Lamm v. Port Deposit, etc.*, 49 Md. 233; 20 Cyc. 57, and note 44. See, also, *Riley v. Bell*, 120 Iowa, 618, 95 N. W. 170, and *Reynolds v. Franklin*, 39 Minn. 24; 38 N. W. 636, as instructive cases on this subject.

2. There was ample evidence to show that there was a partnership existing between these defendants, at least that there was such a relation between them relative to this particular transaction as would bind and render all of them liable for the fraud and false statements of the man Thies. The stationery used by the firm as shown in the evidence recited:

"Office of Gannon, Goulding & Thies, Real Estate and Loans, Insurance, Rentals, and Abstracts of Title. Oldest in Enid. Established September 16, 1893," etc.

Mr. Gannon as a witness stated, when asked as to the relation:

"Gannon & Goulding as real estate, and Mr. Thies as abstractor. Q. Did he [Thies] have any interest in real estate and loans? A. He made real estate, so did we; but in this particular trade we were both mixed up. Q. Explain to the jury, Mr. Gannon, how Mr. Thies came to be interested in this? A. In the first place Mr. Thies and Gannon and Goulding are partners only in the abstract business. Mr. Goulding being out of town, I got Mr. Thies to assist me in this trade and go with Mr. King to see the land."

Another witness said:

"A. There is several signs tacked in front of their office on the telephone poles: 'Gannon, Goulding & Thies, Real Estate and Loans. Money had low rate and no red tape. Enid, Oklahoma:' Q. Have they got signs on the stairs? A. The same signs on tin leads all the way upstairs."

If these three defendants were general partners in this matter, the action of one was the action of all. If they were not general partners, and Mr. Thies was acting for the other two gentle-

men and himself in this transaction in which they all three were to receive benefit, they are all responsible. In *Stanhope v. Swafford*, 80 Iowa, 45, 45 N. W. 403, it is said:

"Where one partner, while acting for the firm, makes an exchange of lands by means of false representations, the other partner is liable for the fraud, though he personally takes no part in the transaction, and is ignorant of the fraud."

In 14 A. & E. Ency. L. (2d Ed.) 156, it is stated in the text:

"It is well settled that a person is responsible for a false and fraudulent representation made by his agent, if authorized by him, or, though not expressly authorized, if made by the agent in the course of his employment. And the same is true of an agent's concealment of facts. One is also responsible for the fraud of a person who has assumed to act for him without authority, if he ratifies his act by accepting the benefit of it or otherwise."

3. Several instructions are complained of in a very general way, without the citation of authorities to sustain the contention made; but we have gone over the declaration of law made by the court and find the same substantially correct under the view expressed herein of the law of the case. Several instructions were given as asked by defendants, and were more than favorable to them. Upon the whole there is no substantial error in the case.

The jury found all the controverted questions of fact in plaintiff's favor, and there was evidence on all the issues fully supporting the findings of the jury.

The judgment should be affirmed.

By the Court: It is so ordered.