## HOOD v. WOOD.

No. 7686—Opinion Filed Nov. 21, 1916.

(161 Pac. 210.)

**1. Fraud—Actions—Representations.**

In a transaction involving the sale of stock in a corporation, representations as to the financial condition of the company, the volume of its business, the amount of its income and expenses, the value of its stock, and its immediate financial prospects are all matters peculiarly within the knowledge of the company, and, when made with the view to induce another to subscribe therefor, are representations of matters of fact, and not expressions of opinion, and such representations so made, and when relied upon by the purchaser of said stock, if false, constitute actionable fraud.

**2. Same.**

A representation as to value is usually regarded as an expression of opinion, but, where false and made by one as an inducement to another, who is ignorant thereof, to enter into a contract, and is relied upon to the detriment of the latter, may be made the basis of an action for damages consequent upon fraud and misrepresentation.

**3. Same—Actions—Defenses.**

One who relies upon a material representation which is false is not always precluded from recovering damages by reason of the fact that he had the opportunity to investigate for himself, and did not do so.

**4. Corporations—Sales of Stock—Rescission —Relief.**

Under section 986, Revised Laws of 1910, one seeking a rescission is only required to restore everything of value, and under the facts of this case it is held that the party seeking a rescission of the contract is entitled to the relief sought.

(Syllabus by Hooker, C.)

Error from District Court, Alfalfa County; J. C. Robberts, Judge.

Action by Laura A. Nuckles Wood against E. E. Hood, trustee of the Shawnee Life Insurance Company, a corporation, dissolved. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Lydick & Eggerman and Titus & Talbot, for plaintiff in error.

Owen & Hill, W. E. Wiles, and E. S. Hadley, for defendant in error.

Opinion by HOOKER, C. It appears from the evidence in this case that the plaintiff, Mrs. Wood, in 1910 lived near Cherokee, Alfalfa county, Okla., and that she was at that time a widow having no one to advise her with reference to investments, and that one J. C. Parker, who was an agent of the Shawnee Life Insurance Company, approached her on

a number of occasions for the purpose of inducing her to subscribe for stock in the Shawnee Life Insurance Company, and after much persuasion upon his part and many representations as to the value of said stock he finally sold her 40 shares for $1,000 in cash, and 50 shares for $1,250, the payment of which was secured by a mortgage upon the real estate involved in this action. The evidence discloses that Mrs. Wood had implicit confidence in the statements made by the agent of the company as to the value of said stock. And the evidence further discloses that the statements made by Parker to her which induced her to make this investment were falsely and fraudulently made, in that Parker represented to her that the company had sold $400,000 in cash of its stock, and that the actual cash value of the stock was $25 per share, and that the same was rapidly rising in value, and that the company would pay a dividend of at least 10 per cent. the first year, and by the use of the dividends she could readily pay the interest upon the note and mortgage executed by her as the purchase price of said stock, and with the dividends therefrom she could eventually pay the entire indebtedness.

It further appears that in a few months after the stock in the Shawnee Life Insurance Company had been delivered to her an agent of the Shawnee Life Insurance Company and another came to her home and represented to her that the stockholders would lose all their money unless they consented to a transfer of the stock in the Shawnee Life Insurance Company for stock in the Amalgamated Insurance Corporations, and that the Shawnee Life Insurance Company was in a failing condition, and in order to save anything for the stockholders it was necessary for this transfer to be made, and that, believing said statement to be true, she consented to said transfer, and received 90 shares of stock in the Amalgamated Insurance Corporations, which she alleges to be of no value and worthless, and she tenders the same into this court for the use and benefit of the Shawnee Life Insurance Company. That the representations and statements made by the agents of the Shawnee Life Insurance Company as to the financial standing of this company, and as to the value of its stock at the time she purchased the same, were false, must be admitted. That these statements induced her to part with the possession of her hard-earned money and to purchase additional stock, securing the same by a mortgage upon her property, cannot be denied, and the fact that she invested virtually all of her savings in this transaction

conclusively demonstrates that the agent of the company pictured the opportunity for her to make money by this investment so easily and so marvelously that she yielded to the seductive influence of the agent's conversation and suffered the same to control and dictate to her business judgment.

The trial court found all of these representations to be falsely and fraudulently made by the company and its agents with the sole view and purpose of deceiving and defrauding this woman out of her earnings, and that the exchange of stock in the Shawnee Life Insurance Company for stock in the Amalgamated Insurance Corporations was but a part and parcel of this one great scheme concocted by the company and its agents to defraud people by the wholesale who might invest in this enterprise. We cannot say that the judgment of the court is against the weight of the evidence. The method of transacting business disclosed by this evidence demonstrates that the Shawnee Life Insurance Company was not a legitimate enterprise, nor was its business conducted upon that high plane which should characterize the business methods of a safe and sound financial institution of this character.

It is asserted here that defendant in error cannot succeed for the following reasons: First, that her cause of action is barred by the statute of limitations; second, that she failed to return what she had received, and therefore she was not entitled to rescind; third, no actionable fraud was shown by the evidence nor alleged in the pleadings.

The first two contentions of plaintiff in error are decided adversely to it by this court in Shawnee Life Insurance Company v. Taylor, 58 Okla. 313, 160 Pac. 622, which case involved every issue of the instant case, wherein it was held:

First: "Construing the allegations of the petition together with a view to substantial justice, it may fairly be inferred that this exchange of stock was a part of the original scheme to defraud, and was intended to complicate the transaction and render recovery more difficult, which it did, as we shall see. We are therefore of opinion that the court did right when he, in effect, held that the statute began to run against the action, not from November 12, 1910, the date when the 325 shares of stock in the defendant company were sold and the deeds executed conveying the land in exchange therefor, but from the date when that stock was exchanged for stock in the Amalgamated Corporations, and hence the court did not err in overruling the demurrer to the petition."

Second: "And in May or June following plaintiffs were induced by the president of

defendant company and another to exchange the remainder of their 325 shares of stock for stock in the same company, which nobody claims to be of any value whatever. Upon this evidence it is urged that the court erred in decreeing a rescission of the sale and a cancellation of the deeds, which he did, because, they say, while plaintiffs properly pleaded a tender of the stock received in exchange, which was ordered turned over to the defendant company, yet, as the evidence discloses that they had parted with the title and possession of all the 325 shares sold them by the defendant company, and could not restore it, and thus put defendant company in status quo, the court had no right to decree as he did. * * *

"And so we might hold, were it not for the fact that the stock of the defendant company, which cannot be restored, we repeat, was of no value. As it is only everything of value that plaintiffs were bound to restore, the court did not err in decreeing a rescission of the contract of sale and a cancellation of the deeds and mortgages complained of, and, in effect, clearing the title of the plaintiffs to the property, especially as the court at the same time ordered turned over to the defendant company the stock of the Amalgamated Company taken in exchange for their stock."

With reference to the contention that no actionable fraud was alleged or proven, it might not be amiss to say that the trial court found the issues in favor of the defendant in error, and ordered the cancellation of the mortgage and deed named herein, upon the sole ground that the same were without consideration, and that the representations made by the Shawnee Life Insurance Company and its agents to the defendant in error were false and fraudulent, and made for the purpose of deceiving them. The doctrine of this court is that the findings of the trial court will not be disturbed on appeal where the evidence reasonably tends to support such findings. The evidence here conclusively establishes that the defendant in error was overpersuaded and overreached by the company and its agents, and as a result thereof she parted with the earnings and savings of a lifetime, and in return therefor received stock in this company which was absolutely worthless. The defendant in error was without business experience, and entertained no conception of the enterprise in which she became interested, but yielded to the siren song cooly and deliberately sung by the Shawnee Life Insurance Company and its agents, and she was thereby defrauded and deprived of her property. The agents of this company told her of the fabulous wealth she could acquire by investing in the stock of this company, what a great and glorious financial institution it was, how well and how success-

fully it was being operated, how valuable the stock was and how rapidly this stock would rise in value, and how easy it would be for her to become rich by investing in the same. These statements were false, and were fraudulently made, and constantly and incessantly made to the defendant in error until they had extracted from her all of her available cash, and she had pledged to them all of her property, and then in a short time thereafter, in order to complicate the situation and make it more difficult for her to recover her property from the company, the Shawnee Life Insurance Company, and others, induced her to exchange her stock for stock in another company, which she did. She did not reap the dream of boundless wealth contemplated by her at the time of this investment, but, according to the evidence, she now faces the ashen gray of poverty at that time of life when the light lingers after the sun is down. It would be placing a premium upon dishonesty and a reward to culprits for the court to say that the defendant in error was not entitled to recover because she had made this exchange of stock. The evidence conclusively establishes a positive, clear, and an actionable case of fraud.

In the case of St. L. & S. F. R. Co. v. Reed, 37 Okla. 355, 132 Pac. 357, it is said:

"That a representation within the meaning of the law of fraud is anything short of a warranty, which proceeds from the action or conduct of the party charged, and which is sufficient to create upon the mind a distinct impression of fact conducive to action. The gist of false misrepresentation is the producing of a false impression upon the mind of the other party, and if this result is actually accomplished the means of accomplishing it are immaterial."

In the case of Miller v. Wissert, 38 Okla. 811, 134 Pac. 63, it is said:

"The rule is that if, with intent to deceive, either party to a contract of sale conceals or suppresses a material fact which he is in good faith bound to disclose, this is evidence of an equivalent to a false representation, because the concealment or suppression is in effect a representation that what is disclosed is the whole truth. The gist of the action is fraudulently producing a false impression upon the mind of the other party; and, if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff. * * *

"False representations of a vendor as to the quantity of a tract of land he offers for sale are not mere matters of opinion, but are material, and he cannot avoid their conse-

quences merely because the vendee might have ascertained their falsity by a survey of the land or by reference to official plats and records."

In Gannon et al. v. Hausaman, 42 Okla. 41, 140 Pac. 407, 52 L. R. A. (N. S.) 519, it is said·

"A false and fraudulent representation, by one who assumes to have personal knowledge, to the purchaser of real estate, that there is no incumbrance thereon, upon which representation the purchaser relies and acts to his injury, will sustain an action for the tort, although the purchaser might have discovered the fraud by searching the public records. A man cannot state falsely to another in such cases and then complain because he was believed."

In Stevens v. Reilly, 56 Okla. 455, 156 Pac. 157, it is said:

"No man should be permitted to complain, or take advantage of the fact that another has too confidently relied on the truthfulness of the statements he has himself made."

In Boehme v. Broadway Theater Co. (Wash.) 157 Pac. 219, it is said:

"The claim that whatever representations were made by appellants were mere expressions of opinion, upon which respondent has no right to rely, is untenable. The financial condition of the company, the volume of its business, the amount of its income and expenses, and what these had been in the past were all matters peculiarly within the knowledge of the appellants, and not easily ascertainable by respondent. We have frequently held that representations as to such matters are representations as to matters of fact, and, if false, and made with knowledge that they were being relied upon by the other party, constitute actionable fraud."

In Christenson v. Koch, 85 Wash. 472, 148 Pac. 585, it is said:

"Ordinary prudence does not require a person to test the truthfulness of representations made to him by another as of his own knowledge, with the intent that they shall be believed and acted upon, even though the party to whom such representations are made may have an opportunity to ascertain the truth for himself."

In Werline v. Aldred, 57 Okla. 391, 157 Pac. 305, this court said:

"A representation as to value is usually regarded as an expression of opinion, but where made by one as an inducement to another, who is ignorant thereof, to enter into a contract, and is relied upon to the detriment of the latter, the same may be made the basis of an action for fraud and misrepresentation."

And it is further said in this opinion that:

"One who relies upon a material representation which is false is not precluded from recovering damages by reason of the fact that he had the opportunity to investigate for himself and did not do so."

In Gwinn v. Ford, 158 Pac. 536, the Supreme Court of Washington said:

"Representations by the seller of corporate stock to the buyers that he was intimately acquainted with the affairs of the company, had inside information from which he knew that the stock was of greater value than the price at which it was selling, that it would rise within a few days, knew where it could be sold in a short time for a marked increase, and that a profit could be realized by a mere loan on the buyers' credit, were representations of matters of fact rather than of matters of opinion."

In Howe v. Martin, 23 Okla. 561, 102 Pac. 128, 138 Am. St. Rep. 840, it is said:

"A party is guilty of fraud and deceit where, with intent to induce another to enter into a contract, he makes a positive assertion, which is material, in a manner not warranted by his information, or where he is not shown to have reasonable grounds for believing it true, where the assertion so made is not true, even though believed by the party making it. In such a case the definite assertion as a fact of that which in untrue, concerning that which the party has no knowledge, is tantamount in its effects to the assertion of something. which the party knows to be untrue."

The lower court found that the discovery of the fraud was not complete until after the exchange of stock, and that brings the same within the time in which the action may be maintained, and, as there is evidence supporting this view, we cannot disturb the same here.

The judgment of the lower court is affirmed.

By the Court: It is so ordered.