## LONERGAN *v.* BUFORD.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 203. Submitted March 30, 1893. — Decided April 10, 1893.

A contract being entered into for the sale of extensive ranch privileges and of all the cattle on the ranches except 2000 steers reserved in order to fulfil a previous contract, it is competent, in an action founded upon it, to show that the steers contracted by the previous contract to be sold were to be of the age of two years and upwards; and, that being established, if there were not enough of that age to fulfil the previous contract, the seller could not take animals of other ages from the rest of the herd to make up the requisite number.

The contract further provided that payment of the larger part of the consideration money was to be made in advance, and that delivery was to be made on the purchaser's making the final payment on a given day. On the day named, having made the previous payment, he made the final one under protest that, inasmuch as the seller declined to make any delivery

without receiving the contract price in full, he made it in order to obtain delivery, and with the distinct avowal that it was not due. *Held*, that this was not a voluntary payment, which could not be recovered back in whole or in part.

ON December 10, 1886, the defendants in error commenced suit in the District Court of the county of Salt Lake, Utah Territory, to recover from the defendants, now plaintiffs in error, the sum of $14,110 for breach of a contract of sale. Defendants appeared and answered. A trial was had before a jury, and on November 14, 1888, a verdict was returned in favor of the plaintiffs for $6631.63, upon which verdict judgment was duly entered. An appeal was taken to the Supreme Court of the Territory, by which court the judgment was affirmed, and from that court the case has been brought here on error. The allegation in the complaint was, that on July 17, 1886, the parties entered into a contract of which the parts material to the questions presented are as follows:

"This agreement made this seventeenth day of July, A. D. 1886, by and between Simon Lonergan and William Burke, of the city of Salt Lake, Territory of Utah, parties of the first part, and the Promontory Stock Ranch Company, a partnership composed of M. B. Buford, J. W. Taylor and George Crocker, all of the State of California, parties of the second part, witnesseth:

" Whereas said first parties are the owners of large herds of cattle now ranging on their ranches in the counties of Oneida, in Idaho, and Box Elder, in Utah, and have contracted and agreed, as hereinafter set forth, to sell the same to said second parties, the exact number of said cattle being unknown; and whereas said first parties have heretofore sold two thousand head of steers from said herds, one thousand head of which have been separated therefrom and delivered, and one thousand head thereof still remain to be delivered; and whereas said second parties have agreed to purchase the said herds, excepting said undelivered one thousand head of steers, on the terms and conditions hereinafter set forth:

"Now, therefore, the said parties do by these presents, in consideration of ten thousand dollars to them in hand paid,

the receipt whereof is hereby acknowledged, the same to be credited on the first payment, as hereinafter set forth, contract and agree to and with the said parties of the second part that they will sell, transfer, convey and deliver to said second parties —

" 1. All of the possessory right which said first parties have heretofore held, enjoyed and possessed of, in, and to any and all ranches or ranges in said county of Oneida, in Idaho, and in said county of Box Elder, Utah, with all water rights, fences and improvements thereon or thereto belonging, and further agree that they or either of them will not hereafter herd, keep or drive any cattle thereon or in any way interfere with the exclusive right, possession or occupation thereof by said second parties.

" 2. That they will sell, transfer and deliver to said second parties all of their said herds of cattle (excepting said reserved and undelivered one thousand head of steers) now on said ranges in said counties of Oneida and Box Elder, said reserved one thousand head of steers to be by first parties separated from said herds and driven off of said ranches within ninety days from July 15, 1886.

\*  \*  \*  \*  \* .

" The said second parties agree and hereby contract to and with said first parties to purchase the said properties from said first parties and to pay therefor, as full consideration for the whole thereof, the sum of thirty dollars per head of cattle delivered, in sight draft on San Francisco, California, to be promptly paid on presentation.

" And it is mutually agreed, that as a basis of estimating the number of cattle sold and the amount to be paid by said second parties said first parties have already this year branded fifteen hundred calves, and shall continue to brand the calves from said herds until they shall have branded in all the number twenty-two hundred and fifty head or until December 1, A. D. 1886, but shall brand no calves after that date, and shall make delivery of all said properties to said second parties so soon as said Lonergan and Burke shall have branded said twenty-two hundred and

fifty calves, or in any event said delivery shall be made not later than December 1, A. D. 1886.

- "And it is agreed that said herds shall be estimated to contain three head of cattle for every calf so branded, or three times the number of calves branded this season and prior to December 1, 1886, but in no event to exceed 2250 calves, including the fifteen hundred head now branded.

"The said second parties agree to pay the said first parties as full consideration for all of said properties, including said calves, a sum equal to thirty dollars per head of all cattle, the number being ascertained by the number of the calves branded as aforesaid, the first payment on fifteen hundred calves already branded representing 4500 head of cattle, equal to $135,000, less the cash payment of $10,000 made at the date hereof, on August 1, 1886, on all calves branded over and above said fifteen hundred head; the third and last payment at the same rate, so soon as said first parties shall have finished their branding and shall have made delivery of the entire property hereby contracted to be sold."

It further stated that the 2000 steers mentioned as reserved and excepted were intended and understood by all the parties to be steers of two years old and upward, and not otherwise. Full performance by the plaintiffs was alleged; and a failure on the part of defendants to deliver, among other things, 422 head of yearling steers. The answer denied that the 2000 steers mentioned as reserved in the contract were understood and intended to be of two years old and upward; but, on the contrary, it was intended and understood by all the parties that yearling steers, as well as others, were included. The answer also denied the other allegations in the complaint, except as to the making of the contract, and as to that alleged full performance by the defendants. On the trial the plaintiffs introduced this contract:

"CHICAGO, ILLINOIS, *June* 29th, 1886.

"We have this day sold to William E. Hawkes, of the city of Bennington, State of Vermont, one thousand (1000) head of steers, four hundred (400) two years old, four hundred and

fifty (450) three years old, and one hundred and fifty (150) four years old, branded ⊙ on the left side and M on the left side. Said cattle are on our ranch in Box Elder County, Utah, and Oneida County, Idaho, and are part of a large herd. The sale is for the sum of twenty-five thousand dollars ($25,000) in cash, to be paid on delivery of the cattle, and delivery to be made on the 15th day of July, 1886.

"And whereas the said Hawkes has purchased the said cattle with the intention of transferring them to a corporation to be formed by him :

"Now, in consideration of the premises and one dollar to us in hand paid by the said Hawkes, we further agree to sell to such company as soon as the same is incorporated and its securities are negotiated and within not more than ninety days from the date hereof and the said company shall then purchase from us one thousand (1000) additional head of steers, four hundred (400) two years old, four hundred and fifty (450) three years old, and one hundred and fifty (150) four years old, branded in the like manner as above specified, and being a part of the cattle now on our ranch as above described, for the sum of thirty-five thousand dollars, ($35,000,) delivery of the last-named one thousand (1000) head to be made at Soda Springs, Idaho, and payment thereof to be made on delivery.

"(Signed)       LONERGAN & BURKE.

"WM. E. HAWKES."

They also offered the testimony of certain witnessses to the effect that Lonergan, one of the defendants, stated to one of the plaintiffs, in conversations prior to the execution of the contract sued on, that the steers which had been sold to Hawkes, and were to be excepted out of the sale to plaintiffs, were two years old and upwards. All this testimony was objected to, on the ground that it tended to contradict or vary the terms of the written agreement between the parties to the suit, and was incompetent, irrelevant and immaterial. These objections were overruled, the testimony admitted, and exceptions taken.

On December 10, 1886, the very day on which this suit was commenced, Taylor, one of the plaintiffs, made the final payment to the defendants, at the same time serving them with this protest:

"To S. J. Lonergan and Wm. Burke, Esqs.

"GENTLEMEN: You will please take notice that in payment to you this date of $27,000 as the balance of the purchase price of certain ranges and herds of cattle in pursuance of a contract made by us with you on July 17, 1886, we do not pay the whole thereof voluntarily. From information possessed by us we are induced to believe that the entire number of cattle and horses by the contract aforesaid contemplated to be delivered to us on the 1st day of December, A. D. 1886, cannot be and is not by you so delivered — *i. e.* that four hundred and twenty-two yearlings, forty cows, heifers, and steers, and two buggy-horses, all of the value of $14,110, are not delivered. Now, therefore, inasmuch as you decline to make any delivery under your contract, except upon the payment by us of the entire purchase price, and because we have already paid you a larger proportion thereof, to wit, $175,500, we do hereby pay $14,110 of said $27,000 under protest and with the distinct avowal that the same is not due you.

"PROMONTORY STOCK RANCH CO.,
"By JOHN W. TAYLOR.
"Salt Lake City, December 10, 1886."

It was claimed by the defendants that, notwithstanding this protest, the payment was voluntary on the part of the plaintiffs, and that, therefore, no money could be recovered back.

*Mr. John A. Marshall* for plaintiffs in error.

I. The contract being plain, unambiguous, and susceptible of legal construction, no evidence should have been admitted to vary and control its terms, giving to it a different construc-

tion from that which its language imported. *Wilson* v. *Deen*, 74 N. Y. 531; *Veazie* v. *Forsaith*, 76 Maine, 179; *Dow* v. *Humbert*, 91 U. S. 294.

II. Attention is called first to the protest of payment to the objection to its admission; and to the ninth assignment of error as to such admission. The coercion or duress which will render a payment involuntary must consist of some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person making the payment, from which the latter has no means of immediate relief except by making payment. *Radich* v. *Hutchins*, 95 U. S. 210; *Brumagim* v. *Tillinghast*, 18 California, 265; *S. C.* 79 Am. Dec. 176; *Mays* v. *Cincinnati*, 1 Ohio St. 268; *Silliman* v. *United States*, 101 U. S. 465, 469.

To entitle a party to recover back money paid under a claim that it was a forced or compulsory payment, it must appear that it was paid upon a wrongful claim or unjust demand, under the pressure of an actual or threatened seizure, or interference with his property of serious import to him, and that he could escape from or prevent the injury only by making such payment. *Kreamer* v. *Deustermann*, (Minn.,) 35 N. W. Rep. 276; *Tapley* v. *Tapley*, 10 Minnesota, 448; *S. C.* 88 Am. Dec. 76; *Farguson* v. *Winslow*, 34 Minnesota, 384; *Emmons* v. *Scudder*, 115 Mass. 367; *Heysham* v. *Dettre*, 89 Penn. St. 506. See, also, *Miller* v. *Miller*, 68 Penn. St. 486; *Wolfe* v. *Marshal*, 52 Missouri, 171; *Peyser* v. *Mayor*, 70 N. Y. 497; *Silliman* v. *United States*, 101 U. S. 469.

The conduct of the parties and the evidence show that the payment sought to be recovered back by the defendants in error was made by them to plaintiffs in error while the title to the property was in the plaintiffs in error, and with a full knowledge on the part of defendants in error of all the facts given in evidence; wherefore viewed and determined by the rules as stated in the foregoing authorities, such payment was voluntary and cannot be recovered back. In other words, there being no duress of person, or property, or law, the defendants in error failed to make their case, and therefore were not entitled to recover.

*Mr. Samuel A. Merritt* for defendants in error.

MR. JUSTICE BREWER, after stating the facts, delivered the opinion of the court.

There was no error in admitting in evidence the contract of sale to Hawkes of the 2000 steers, that being, according to the testimony, unquestionably the sale referred to in the exception and reservation named in the contract in suit, nor the statements made by Lonergan, the defendant, in reference to the ages of the steers which defendants had sold prior to such last contract, and which they were to except therefrom. This was not testimony varying or contradicting the terms of the written agreement between the parties; it only interpreted and made certain those terms; it simply identified the property which was to pass thereunder to plaintiffs. The exception was not one by quantity, and simply of 2000 steers — an exception which might or might not give to the defendants the right to select such steers as they saw fit — but it was an exception by description, to wit, of steers that had been sold, and it was necessary to prove what had been sold in order to determine what could be and were included within the contract. Until the exception was made certain, that which was conveyed could not be certain. Take a familiar illustration : A deed conveys a tract of land by metes and bounds, but in terms excepts therefrom a portion thereof theretofore conveyed by the grantor; the former deed is referred to and described, but the boundaries of the tract conveyed thereby are not specified. Now, in order that what is conveyed by the deed in question may be known, the land excepted therefrom must be known, and for that the deed referred to containing the excepted land must be produced. The production of such prior deed is no contradiction, and involves no variance of the terms of the latter, but is necessary to make certain that which is in fact conveyed thereby. Or another illustration : Suppose a written contract is made for the sale of a herd of cattle at $30 a head, excepting therefrom all yearling steers — would not parol testimony of the number of yearling steers

in the herd be necessary in order to show the number of cattle sold, and the aggregate sum to be paid? Evidence that the herd contained 1000 head would not end the question, and parol testimony of the number of yearling steers would not be evidence contradicting the contract ; on the contrary, it would be in support thereof, to make certain that which by the terms of the instrument was not certain.

Again, it is objected that the plaintiffs were not injured by the failure of the defendants to deliver the four hundred and twenty-two yearling steers, the idea seeming to be that steers two years old and upward were delivered instead of such yearlings. Of this, however, there was no evidence, and the court expressly charged the jury that " the plaintiffs are entitled to recover from the defendants for such steers of the age called for in the contract so failed to be delivered the value thereof as the testimony and the admission in the answer shall justify you to determine, provided that you do not find that the defendants, in lieu of the steers under the age set forth in the contract so taken away, not delivered, left other steers of the age called for by the terms of the contract, and, if so, then the plaintiffs are not entitled to recover for any steers so left in the place of those taken away, provided the value of the steers so left (if you find that to be the case) was equal to the value of the steers said to have been taken away by the defendants Lonergan and Burke." The defendants paid for the cattle at an estimate of three head of cattle for calves branded within a specified time. They were entitled to all the cattle belonging to defendants ranging in the places named, excepting those specially reserved ; and if there were not enough of steers in those herds, of the kind described, to satisfy the contract which they had made with Hawkes, they could not make good the deficiency by taking steers of a different description, all of which they had sold to plaintiffs before any attempt at delivery to Hawkes. There was no error in the ruling in this respect.

Finally, it is objected that the last payment was voluntary, and, therefore, cannot be recovered, either in whole or in part, although it was in terms made under protest. It appears

from the testimony that the defendants refused to deliver any of the property without full payment. This was at the commencement of the winter. The plaintiffs had already paid $175,500, and without payment of the balance they could not get possession of the property, and it might be exposed to great loss unless properly cared for during the winter season. Under those circumstances, we think the payment was one under duress. It was apparently the only way in which possession could be obtained, except at the end of a lawsuit, and in the meantime the property was in danger of loss or destruction. The case comes within the range of the case of *Radich* v. *Hutchins*, 95 U. S. 210, 213, in which the rule is thus stated: "To constitute the coercion or duress which will be regarded as sufficient to make the payment involuntary, . . . there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another, from which the latter has no other means of immediate relief than by making the payment. As stated by the Court of Appeals of Maryland, the doctrine established by the authorities is, that 'a payment is not to be regarded as compulsory, unless made to emancipate the person or property from an actual and existing duress imposed upon it by the party to whom the money is paid.' *Mayor and City Council of Baltimore* v. *Lefferman*, 4 Gill, (Md.,) 425 ; *Brumagim* v. *Tillinghast*, 18 Cal. 265 ; *Mays* v. *Cincinnati*, 1 Ohio St. 268."

In *Stenton* v. *Jerome*, 54 N. Y. 480, the defendants, who were stockbrokers, held two United States bonds belonging to the plaintiff, which they threatened to sell unless she paid a balance claimed by them on account. On p. 485 the court says: "Great stress, however, is laid upon the payment by the plaintiff of the balance shown by the account, as rendered, to be due from her. This payment was in one sense voluntary, as she was not compelled by physical duress to pay it. But the defendants held her two bonds, which they threatened at once to sell unless she would pay this balance. She had great need for the bonds and could not well wait for the slow process of the law to restore them to her, and she

paid this balance, not assenting to the account and not assenting that it was justly due, for the sole purpose of releasing her bonds. Under such circumstances it is well settled that the law does not regard a payment as voluntary."

In *Harmony* v. *Bingham*, 12 N. Y. 99, 117, it is said: " If a party has in his possession goods or other property belonging to another, and refuses to deliver such property to that other unless the latter pays him a sum of money which he has no right to receive, and the latter, in order to obtain possession of his property, pays that sum, the money so paid is a payment by compulsion." See, also, *Baldwin* v. *Liverpool &c. Steamship Co.*, 74 N. Y. 125; *McPherson* v. *Cox*, 86 N. Y. 472; *Spaids* v. *Barrett*, 57 Illinois 289; *Hackley* v. *Headley*, 45 Michigan, 569.

These are all the questions in this case. We see no error in the proceedings below, and the judgment is

*Affirmed.*