141 P.2d 326

**EVERETT v. GILLILAND et al.**

No. 4778.

Supreme Court of New Mexico.

Sept. 13, 1943.

Frazier & Quantius, of Roswell, for appellants.

E. E. Young, of Roswell, for appellee.

THREET, Justice.

Plaintiff (appellee) brought this action of fraud and deceit, growing out of the pur-

chase and sale of real estate, against the defendants (appellants) and sued out a writ of attachment. Plaintiff alleged that on the 11th day of March, 1939, he entered into a written contract with the defendants for the purchase of certain real estate and as a part of the purchase price assumed and agreed to pay a mortgage thereon held by the Farm Security Administration in the sum of $2,776. That defendants represented that the sum of $2,776 was all that was due on the mortgage. That at the time the contract was entered into there was actually due the Farm Security Administration the sum of $3,062.45, which amount plaintiff was compelled to pay, and was in excess of the contract price, and the amount defendants represented was due to the mortgagee. That the defendants well knew that the sum of $2,776 was not the total amount due on such mortgage, but were fully advised that an additional amount in the sum of $325.29, representing unpaid interest, was also due, but defendants failed to reveal this fact to plaintiff.

The case was submitted to the court, without a jury, upon the issues made up by the complaint and answer, and the attachment issue. Judgment was entered for the plaintiff in the amount claimed and also sustaining the writ of attachment, from which judgment this appeal is prosecuted.

Defendants assign error to wit:

1. The court erred in awarding judgment to plaintiff, because plaintiff knew all the facts involved when he paid the interest to the escrow agent voluntarily, and obtained the deed, concealing his objections from the defendants, and in no way being misled by them.

2. There is no basis upon which the writ of attachment can be legally sustained in this case.

3. The court erred in denying the requested findings of fact of defendants, 1 to 10 inclusive, because they are each sustained by all of the evidence in the case.

4. The court erred in making its findings of fact numbers 1, 2, 4, 6, 7, 8 and 9 insofar as they find fraud on the part of the defendants, non-liability on the part of plaintiff, liability on the part of the defendants to repay plaintiff, and invoke the contract provisions of acceptance of the deed.

Under point 3 of defendants' brief, which includes assignments of error 3 and 4, the court's action denying defendants requested findings of fact, and in making certain findings of its own, is attacked. Defendants, however, have failed to observe section 6 of Rule 15 of the Supreme Court, which reads as follows: "A contention that a verdict, judgment, or finding of fact is not supported by substantial evidence will not ordinarily be entertained, unless the party so contending shall have stated in his brief the substance of all evidence bearing upon the proposition, with proper reference to the transcript. Such statement will be taken as complete unless the opposite party shall call attention in like manner to other evidence varying upon the proposition." Hobbs Water Co. v. Madera et al., 42 N.M. 373, 78 P.2d 1118; Alamo-

gordo Improvement Co. v. Prendergast, 45 N.M. 40, 109 P.2d 254.

Having examined the record, however, and finding substantial evidence to support the findings attacked by defendants, we are bound thereby. Taylor v. Sarracino, 44 N.M. 469, 104 P.2d 742.

The facts found by the trial court are, in substance, as follows:

1. That on the 11th day of March, 1939, plaintiff and defendants entered into a written contract wherein the defendants agreed to sell, and the plaintiff agreed to purchase certain real estate for the total consideration of $4,000, and as part of the purchase price plaintiff assumed and agreed to pay to the Farm Security Administration, which was the amount the corporation advised the parties was due, the sum of $2,776, which was evidenced by mortgage or mortgages on the lands in question. The court found that the contract of purchase and sale was in writing. The material portions, necessary for a determination of the questions here, are as follows:

"The parties of the first part agree to make and furnish to the party of the second part an abstract of title showing good and marketable title to the parties of the first part to the above described section of fee lands, free from all liens and encumbrances, except a mortgage thereon in the sum of Two Thousand Seven Hundred Seventy-Six and no/100 (2,766.00) Dollars, payable to the Farm Security Administration, which the party of the second part assumes and agrees to pay.

"The party of the second part shall have ten days in which to have said abstract examined after the same shall be furnished to him, and if there shall appear any defects in the title to said property other than herein described the parties of the first part shall have a reasonable time in which to cure such defects.

"The party of the second part agrees to pay to the parties of the first part as the total consideration of said properties the sum of Four Thousand ($4,000.00) Dollars, as follows:

"First, the assumption of the above described mortgage to the Farm Security Administration in the sum of $2,776.00, which matures in the year 1944 and payable by installments on the 1st day of January of each year, and the balance, $1,224.00, to be paid in cash upon the furnishing of good title to the above described fee land showing same to be free and clear of all encumbrances, except the above described mortgage.

"It is further agreed between the parties hereto that the party of the second part shall deposit in escrow in the First National Bank of Roswell, New Mexico, the sum of Five Hundred ($500.00) Dollars in cash, which shall be applied on the payment of said sum of $1,224.00 as a part of the consideration of this agreement, provided the party of the second part shall perform all the terms and conditions of this contract upon his part to be performed; but in the event the party of the second part shall neglect, fail or refuse to pay said sum of $1,224.00, to the parties of the first part

when good title shall be tendered him, as hereinabove provided, then, in that event, the said sum of $500.00 shall be forfeited to the parties of the first part, and considered as fixed and liquidated damages for such failure on the part of the party of the second part to carry out and perform the conditions of this contract upon his part to be performed, and said party of the second part shall not have any right to maintain any action, either in law or equity to recover said sum so forfeited, or any part thereof."

That the plaintiff paid the defendants the sum of $1,224, which represented the difference between $4,000 agreed price and the $2,776, which the plaintiff assumed and agreed to pay to the Farm Security Administration; that the defendants made, executed and delivered to the plaintiff a deed covering said land, which deed provided the land or lands purchased was subject to the sum of $2,776 due the Farm Security Administration. That subsequent to the time the contract was entered into, and the deed executed and placed in escrow, but before payment of the balance to the escrow agent and delivery of the deed to the plaintiff, the plaintiff sought to procure a new loan on the land purchased from the defendants and including other lands, and at that time plaintiff discovered that at the time he purchased the lands from the defendants there was interest due on the loan that the defendants had procured from the Farm Security Administration in the sum of $285, which was in excess of the amount agreed to be paid by the plaintiff; that

plaintiff called at the home of the defendants and informed Catherine Gilliland of the excess price of the loans and interest charged, and the defendant, Catherine Gilliland, stated to the plaintiff that she knew it would come out some time (speaking of the interest) and for the plaintiff to advise the defendant, Charles E. Gilliland, which he failed to do. That the plaintiff in order to procure the new loan on the land or lands, bought from the defendants, and other lands, was compelled to pay and did pay, in order to procure the new loan and discharge the lien and get the deed, the sum of $258 in excess of what he agreed to pay the defendants for their lands.

That the total sum due from defendants to plaintiff, including interest March 11, 1939, at the rate of 5%, is $325.29; that the plaintiff did not assume any part of the loan due the Farm Security Administration, except the sum of $2,776, with interest afterwards accrued thereon, and did not assume the accrued interest in the sum of $285 at the time he purchased the said lands.

That the sum of $2,776, plus the accrued interest of $285 at the time the contract was made, was secured by mortgage on the lands purchased by the plaintiff from the defendants, and payable to the Farm Security Administration.

That the defendants with intent to defraud plaintiff, withheld information that the additional sum of $285 was owing to the Farm Security Administration.

Defendants' chief contention is that the court erred in awarding judgment to the plaintiff, because plaintiff knew all the facts involved when he paid the interest to the escrow agent voluntarily and obtained the deed, concealing his objections from the defendants and in no way being misled by them.

Their chief argument is that after plaintiff discovered there was an additional amount due on the Farm Security Administration mortgage he made no protest, but voluntarily paid the excess amount. That, if the plaintiff had objected to the payment of the additional amount and so advised the defendants, they would have rescinded the contract. Plaintiff not having done so, he is now estopped from claiming any amount he was compelled to pay over and above the contract price of the real estate. This argument is untenable. The defendants were in no position to rescind if, indeed, fraud had been practiced by them in inducing plaintiff to purchase the property.

It was the privilege of the plaintiff, thinking himself to have been defrauded, to determine his course of action. He could either bring an action to rescind the contract or affirm and sue for damages. Dean v. Cole, 103 Or. 570, 204 P. 952; Sullivan v. Helbing, 66 Cal.App. 478, 226 P. 803; Werline v. Aldred, 57 Okl. 391, 157 P. 305; Thrams v. Block, 43 N.M. 117, 86 P.2d 938.

Having elected to affirm the contract and sue for damages, plaintiff was under no obligation to advise defendants of his intended action so that they might have the opportunity to rescind the contract. A demand upon defendants was not a prerequisite to the institution of a suit for damages. 27 C.J. p. 20, Sec. 132. Sollund v. Johnson, 27 Minn. 455, 8 N.W. 271.

The controlling question here is, were the defendants, under the circumstances of the case, duty bound to disclose to the plaintiff all the information within their knowledge relative to the balance due on the mortgage held by the Farm Security Administration in order that he might be placed on an equal footing with them?

In 23 Am.Jur. 854, Sec. 78, we find this language: "The principle is basic in the law of fraud as it relates to nondisclosure that a charge of fraud is maintainable where a party who knows material facts is under a duty, under the circumstances, to speak and disclose his information, but remains silent. Situations evoking the duty of disclosure may arise in various ways in different cases. Generally speaking, however, in the conduct of various transactions between persons involving business dealings, commercial negotiations, or other relationships relating to property, contracts, and miscellaneous rights, there are times and occasions when the law imposes upon a party a duty to speak rather than to remain silent in respect to certain facts within his knowledge and thus to disclose information, in order that the party with whom he is dealing may be placed on an equal footing with him." And in the

same volume at page 857, Sec. 80, it is said: "Knowledge that the other party to a contemplated transaction is acting under a mistaken belief as to certain facts is a factor in determining that a duty of disclosure is owing. There is much authority to the effect that if one party to a contract or transaction has superior knowledge, or knowledge which is not within the fair and reasonable reach of the other party and which he could not discover by the exercise of reasonable diligence, or means of knowledge which are not open to both parties alike, he is under a legal obligation to speak, and his silence constitutes fraud, especially when the other party relies upon him to communicate to him the true state of facts to enable him to judge of the expediency of the bargain." In the case of H. B. Cartwright & Bro. v. United States B. & T. Co., 23 N.M. 82, at page 131, 167 P. 436, at page 453, we said: "Silence or no disclosure where there is a duty to speak will alone, and unaccompanied by any element of active fraud be sufficient to ground an action for deceit." "False representations of a vendor as to the quantity of a tract of land he offers for sale are not mere matters of opinion, but are material, and he cannot avoid their consequences merely because the vendee might have ascertained their falsity by a survey of the land or by reference to official plats and records." Miller v. Wissert, 38 Okl. 808, 134 P. 62, 64. To the same effect, see Richardson v. Heney et al., 18 Ariz. 186, 157 P. 980; Berry et ux. v. Stevens et al., 168 Okl. 124, 31 P. 2d 950. Stewart v. Potter, 44 N.M. 460, 104

P.2d 736; Morris, et ux. v. McLendon et al., 167 Okl. 68, 27 P.2d 811. And in Gannon, Goulding & Thies v. Hausaman, 42 Okl. 41, 140 P. 407, 52 L.R.A.,N.S., 519, the court said: "Where a person has been induced, through the fraud and false statements of another, to purchase property as clear, which in fact is incumbered by a valid enforceable lien, such defrauded person, in an action for damages because of the fraud and deceit, may recover the amount of the incumbrance by way of damages, except as it may exceed the value of the property, and without having suffered a foreclosure, ouster, or having paid it off, because he ought to be considered presently damaged in a sum which the fraud of another has made it inevitable he shall pay to protect his property."

The purchase price of the real estate was $4,000. Plaintiff paid the defendant the sum of $1,224 and assumed the mortgage indebtedness in the sum of $2,776, being the difference between the cash payment and the total purchase price.

█ Plaintiff, for the purpose of procuring a loan on the lands purchased from defendants, was compelled to pay, and did pay, an amount in the sum of $285 with interest in excess of the amount he agreed to pay the defendants for the land so purchased. Before the contract was drawn and executed the plaintiff, the defendant Charles Gilliland and Ray Barnett, the real estate agent, called at the office of the Farm Security Administration to find out the exact amount of the balance due on the

mortgage indebtedness. They were advised that the amount of indebtedness was $2,776. The defendant Charles E. Gilliland testified that nothing was said about the interest. He must have known there was interest due on the loan. The mortgage was payable in installments on the first of each year, and this was on the 11th day of April. Having made all the payments under the mortgage he was presumed to know the status of his loan. The defendant, Charles E. Gilliland, having undertaken to disclose all the facts concerning the mortgage indebtedness, was bound to do so. 23 Am.Jur. 856, Sec. 76.

When the agent for the Farm Security Administration stated that there was $2,776 due on the mortgage indebtedness, the defendant, Charles E. Gilliland, must have known that this statement was calculated to induce the plaintiff to enter into the contract. This information was the inducing cause in making the contract. If he, the defendant, Charles E. Gilliland, was under no obligation to speak, but having undertaken to do so, even through a third party upon whom he knew the plaintiff relied for information, and seeing that the plaintiff was being misled by said misinformation or by withholding information material to the transaction, it was his duty to speak. In Pohl v. Mills et al., 218 Cal. 641, 24 P.2d 476, the court said:

"Though one may be under no duty to speak, if he undertakes to do so, he is bound to speak truly without suppression of known material facts. * * *

"Where misrepresentations were calculated to induce making of contract, presumption is that they did, and nonreliance in fact must be shown to defeat relief for fraud."

In Hutchinson v. Gorman, 71 Ark. 305, 73 S.W. 793, the court held: Where the vendee assumed the amount of the debt secured by a certan mortgage, and paid it, it was held that he might sue the vendor and his agent for fraud and deceit on account of false representation of the agent as to the amount of the balance of the debt. 26 A.L.R. 534.

See also Short v. Cure, 100 Mich. 418, 59 N.W. 173; Loucks v. Taylor, 23 Ind.App. 245, 55 N.E. 238; Timmerman v. Whiting, 118 Minn. 398, 137 N.W. 9.

Defendants assert that the acceptance of the deed by the plaintiff waived the provisions of the contract, and cite Norment v. Turley, 24 N.M. 526, 174 P. 999, and Wilson v. Mahill, 35 N.M. 13, 288 P. 1047, as authority. These cases are not controlling. Here we have a different question. One of fraud and deceit; a failure to disclose material information, which induced the plaintiff to enter into the contract. The false representation and the contract were distinct and separable. The former was the inducement for the latter, and did not merge in the contract or deed. Continental Life Ins. Co. v. Smith, 41 N.M. 82, 64 P.2d 377. Fuqua v. Trego et al., 47 N.M. 34, 133 P.2d 344. In Devlin on Real Estate, Third Ed., page 1512, we find this rule: "A deed also merges all representa-

tions of freedom from encumbrance in the absence of fraud and of express or implied covenants." In 23 Am.Jur. 775, Sec. 23, we find this language: "It is elementary that where a contract or transaction was induced by false representations, the representations and the contract are distinct and separable—that is, the representations are usually not regarded as merged in the contract or deed." One of the leading cases cited in the foot note to this work is Darlington v. J. L. Gates Land Co., 142 Wis. 198, 125 N.W. 456, 459, and in the body of the opinion the court said: "It would seem to be sound in principle to hold that the doctrine of merger should not apply in a case involving actual fraud. It is here alleged that the agent of the defendant not only represented that he had good title to the lands, but he specifically stated that the timber thereon would become the property of the plaintiffs if they purchased, and that defendant owned it and had a good right to sell it. It is further alleged that such agent knew the representations to be false and fraudulent when he made them. Actual fraud is therefore shown by the complaint and admitted by the demurrer. A tort was committed, assuming the averments made to be true. The rule of damages, as well as the remedy for the enforcement of the right may be different in a tort action from one on contract. Huganir v. Cotter, 102 Wis. 323, 78 N.W. 423, 72 Am.St.Rep. 884. We think it is a salutary rule to hold that, where as here actual fraud is alleged, the fraudulent oral representation as to title is not merged in the covenant of warranty contained in the deed subsequently given. We do not understand that the federal decisions cited lay down any different rule. The doctrine of those cases seems to be confined to representations made in good faith, and does not extend to representations known to be fraudulent when made."

It is next urged that the payment of the excess amount was voluntary and may not be recovered. The excess amount was for accrued interest, the knowledge of which was withheld from the plaintiff by the defendants when the contract of sale was executed. The plaintiff paid the defendants the cash payment in the sum of $1,224. He applied for a loan from the Federal Land Bank in the sum of $4,000 and in order to procure this loan it was necessary for him to obtain a release from the Farm Security Administration of its lien. The excess amount was covered by the Farm Security Administration mortgage and was a lien on the lands purchased from the defendants. The mortgagee refused to execute a release until the excess amount was paid.

The plaintiff had paid a substantial sum on the purchase price of the property and had assumed a mortgage for the balance in a fixed sum. But, in order to deal with his property, which he had a right to do, he was compelled to either pay an additional amount or lose the deal, and in the end be subjected to a foreclosure of the mortgage for non-payment.

We think the circumstances here bring this case within the rule laid down in Lonergan v. Buford, 148 U.S. 581, 13 S.Ct.

684, 37 L.Ed. 569, and cited with approval in Cadwell v. Higginbotham, 20 N.M. 482, 151 P. 315. The court in the Lonergan v. Buford case, supra [148 U.S. 581, 13 S.Ct. 686, 37 L.Ed. 569], said: "Finally, it is objected that the last payment was voluntary, and therefore cannot be recovered, either in whole or in part, although it was, in terms, made under protest. It appears from the testimony that the defendants refused to deliver any of the property without full payment. This was at the commencement of the winter. The plaintiffs had already paid $175,500, and without payment of the balance they could not get possession of the property, and it might be exposed to great loss unless properly cared for during the winter season. Under those circumstances, we think the payment was one under duress. It was apparently the only way in which possession could be obtained, except at the end of a lawsuit, and in the mean time the property was in danger of loss or destruction."

Defendants second assignment of error is: "There is no basis upon which the writ of attachment can be legally sustained."

As stated in the beginning, the attachment issues and the issues in the main case were submitted and tried together.

Plaintiff filed his affidavit of attachment under 1941 Comp. Sub-Sec. VII, Sec. 22-101. The defendants filed their answer placing in issue the truth of the allegations of the affidavit. The issue thus raised by the affidavit and answer thereto is tried before the court or jury, as in other cases of law. Staab v. Hersch, 3 N.M. (Gild.) 269, 3 P. 248. It is determined by the evidence adduced.

The issue upon the traverse of an affidavit in attachment is the existence of the stated ground of attachment. Mundil v. Hutson, 33 N.M. 388, 268 P. 566.

The court found this issue in favor of the plaintiff and, there being substantial evidence to support such finding, it will not be disturbed upon appeal. Taylor v. Sarracino, supra.

Finding no error in the record the judgment will be affirmed, and

It. is so ordered.

SADLER, C. J., and MABRY, BICKLEY, and BRICE, JJ., concur.