This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-37195**

**LINDA J. FILIPPI,**

Petitioner-Appellant,

v.

**DENNIS WALLIN; BRANDON HUSS;**
**WALLIN, HUSS & ASSOCIATES LLC;**
**COUNTY OF TORRANCE, by and through**
**BOARD OF COUNTY COMMISSIONERS**
**OF TORRANCE COUNTY, NEW MEXICO,**

Respondents-Appellees.

**APPEAL FROM THE DISTRICT COURT OF TORRANCE COUNTY**
**Shannon Murdock, District Judge**

Martin E. Threet & Associates
Joseph L. Romero
Albuquerque, NM

for Appellant

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Jennifer A. Noya
Elizabeth A. Martinez
Sonya R. Burke
Albuquerque, NM

for Appellees Wallin, Huss & Associates, LLC; Dennis Wallin; and Brandon Huss

Quiñones Law Firm
Carlos M. Quiñones
Santa Fe, NM

for Appellee Board of County Commissioners of Torrance County

**MEMORANDUM OPINION**

**ATTREP, Judge.**

**{1}**    Petitioner Linda Filippi appeals the district court's orders denying her request for relief pursuant to the Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2019), and dismissing her other claims. We hold that the district court erred in failing to consider whether additional documents identified by Filippi were responsive to her IPRA requests, and we therefore reverse this portion of the district court's ruling and remand for further proceedings. We otherwise affirm.

**BACKGROUND**

**{2}**    Filippi's claims in this lawsuit relate to her appeal to the Board of County Commissioners of Torrance County (the County) of a decision made by the County's zoning officer. The zoning officer determined that a conditional use permit was not required for a business, JBM Land & Cattle, LLC (JBM), to grow medical marijuana on land located in the County. Dennis Wallin, Brandon Huss, and Wallin, Huss & Associates, LLC (collectively, the Attorneys) provided legal services to the County relating to land use, planning and zoning, and development issues, including advising the County regarding Filippi's zoning appeal. The zoning appeal hearing occurred on July 29, 2015. Prior to the hearing, the Attorneys, through Wallin, told Filippi and JBM that they would ensure that all communications regarding the zoning appeal be sent to both Filippi and JBM. At the hearing, however, Wallin referenced prior conversations he had with representatives of JBM, of which Filippi apparently was unaware.

**{3}**    Two days after the zoning appeal hearing, on July 31, 2015, Filippi sent an IPRA request to the County (the First Request), seeking "a copy of all electronic/hard copy records/communications between . . . Wallin, and representatives of [JBM,]" among others, between January 1, 2015, and the present. In response, the County, through Huss, provided copies of two emails and represented that the emails constituted all communications responsive to the First Request.

**{4}**    On December 22, 2016, Filippi submitted another IPRA request to the County (the Second Request). The Second Request, in pertinent part, sought inspection of the following records: "[The Attorneys'] correspondence, communications, whether electronic or hard copy, including but not limited to emails, notes, memorandum, phone records, faxes, recordings, pictures from July 1, 2015 through August 31, 2015 between [the Attorneys] and . . . [JBM,]" among others. The County, through Wallin, provided responsive documents "that [were] not subject to attorney/client privilege or attorney work product privilege[.]" Filippi requested a privilege log, which Wallin provided to her.

**{5}**    On April 11, 2017, Filippi submitted another IPRA request to the County (the Third Request), "requesting to inspect all of the invoices for legal services submitted to [the] County for payment by [the Attorneys] from March 2015 through the present date." The County produced billing statements in their entirety, without redaction.

**{6}** Based on her review of the privilege log and the billing statements, Filippi believed the County had failed to provide all documents responsive to the First and Second Requests. She then filed the lawsuit that is the subject of this appeal. Filippi alleged the Attorneys and the County violated IPRA, and she sought a writ of mandamus requiring them to produce all documents responsive to her IPRA requests. In addition, Filippi alleged the Attorneys violated a common law right to access records, requested treble damages for deceit and/or collusion, and sought a constructive trust as to any public records the Attorneys possessed.[1]

**{7}** The Attorneys moved to dismiss all claims against them on the ground that Filippi failed to state a claim for relief. Agreeing with the Attorneys, the district court dismissed with prejudice all of Filippi's claims against them. As for Filippi's claims against the County, the district court held a hearing to determine whether it should issue a writ of mandamus directing the County to produce additional documents to Filippi for inspection. At the writ hearing, Filippi testified in detail about the billing statements she obtained in response to her Third Request. Filippi testified about her belief that various items reflected in the billing statements described documents that were responsive to her First and Second Requests, but were not disclosed. At the same hearing, Filippi also testified about the emails described in the privilege log. Filippi's counsel argued that the attorney client privilege or work product doctrine did not apply to these emails because they involved nonclients.

**{8}** Following the hearing, the district court entered an order requiring the County to "turn over the documents in question for an in camera review." The County sent the district court only the documents listed in the privilege log and certified that it had complied with the district court's order. At a subsequent hearing on Filippi's request to set specific terms and conditions for the district court's in camera review, counsel explained Filippi's concern that the County had not turned over any of the additional responsive documents identified by the billing statements. Apparently understanding Filippi's concerns, the district court ordered the County to: (1) search for additional documents identified in the billing statements; (2) turn over any additional documents for the in camera review; and (3) submit an affidavit that it had provided all documents to the district court.

**{9}** Before receiving any additional documents or the affidavit, however, the district court entered its order on in camera review. In that order, the district court stated it had reviewed the documents listed in the privilege log and summarily agreed with the County that they were properly withheld as attorney client privileged or protected work product. Regarding the issue of additional documents identified in the billing statements, the district court's order stated, "The court also reviewed the . . . billing statement . . . . Law offices have the discretion whether to bill for small things. It does not rise to the

---

1Although the complaint does not expressly designate the common law access to records claim as alleged only against the Attorneys, Filippi argues this claim, as she did below, as having been brought only against the Attorneys and not the County.

[level] of concern to turn over a copy of the email log to [Filippi] at this time."[2] The district court thus denied Filippi's request for a writ of mandamus against the County to produce additional documents pursuant to IPRA.

**{10}** Filippi appeals both the denial of the writ as to the County and the dismissal of her claims against the Attorneys. We address each in turn.

**DISCUSSION**

**I.    Claims Against the County**

**{11}** Filippi contends the County did not comply with IPRA and argues the district court erred in declining to review in camera, and in denying the production of, additional documents. Specifically, Filippi asserts the billing statements produced in response to her Third Request allude to the existence of documents responsive to the First and Second Requests that were never produced and were not listed in the privilege log. Filippi also argues that the County waived attorney client privilege to these documents and that the district court should have utilized different in camera review procedures. We conclude that the district court erred by denying Filippi's IPRA claim before determining whether the County had fully complied with the First and Second Requests, and we accordingly reverse and remand for further proceedings. We otherwise affirm the district court's order as to the County.

**A.    The District Court's Decision Not to Review Additional Documents**

**{12}**  "We generally review the granting or denial of a writ of mandamus under an abuse of discretion standard." *N.M. Found. for Open Gov't v. Corizon Health*, 2020-NMCA-014, ¶ 15, 460 P.3d 43 (internal quotation marks and citation omitted), *cert. denied*, 2020-NMCERT-___ (No. S-1-SC-37951, Dec. 16, 2019). A district court abuses its discretion if its discretionary act is premised on an erroneous view of the law. *See Rangel v. Save Mart, Inc.*, 2006-NMCA-120, ¶ 12, 140 N.M. 395, 142 P.3d 983. Further, to the extent our analysis requires interpretation of IPRA, our review is de novo. *Faber v. King*, 2015-NMSC-015, ¶ 8, 348 P.3d 173.

**{13}** The district court based its decision not to produce, or even review in camera, the documents described in the billing statements on its determination that "[l]aw offices have the discretion whether to bill for small things." This evidences a fundamental misunderstanding of IPRA. Our Legislature and courts have made clear that IPRA is to be construed broadly in favor of disclosure. *See, e.g.*, § 14-2-5 ("[I]t is declared to be the public policy of this state, that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees."); *State ex rel. Toomey v. City of Truth or Consequences*, 2012-NMCA-104, ¶ 22, 287 P.3d 364 (emphasizing "that IPRA should be construed broadly to effectuate its purposes, and courts should avoid narrow definitions that would defeat the

---

2There is no "email log" in the record or sealed record, so we are at a loss as to what the district court references here.

intent of the Legislature"). Notably, IPRA does not exempt from disclosure "small things." *See* § 14-2-1 (enumerating categories of documents exempt from inspection).

**{14}**     Furthermore, based on our review of the record, it appears that documents responsive to Filippi's IRPA requests may exist. At the writ hearing, Filippi identified numerous entries in the billing statements describing documents that appear to be responsive to her First and Second Requests but that were not identified in the privilege log or produced for inspection. As just one example among many, Filippi testified about a June 26, 2015, billing entry for Wallin, providing, "Review e-mails from JBM; telephone conference Sullivan." Filippi explained that "Sullivan" referred to a principal of JBM. This description suggests the existence of emails that are responsive to the First Request, but which Filippi claims she did not receive and were not listed in the privilege log. We agree with Filippi that the billing entries suggest that other, nondisclosed, responsive documents exist, which if they did would render the County's response to the First and Second Requests incomplete or inadequate under IPRA. *See Britton v. Office of Att'y Gen.*, 2019-NMCA-002, ¶ 33, 433 P.3d 320 ("[W]hen a public body provides an incomplete or inadequate response to a request to inspect public records, that body is not in compliance with IPRA.").

**{15}**     We therefore conclude the district court erred by failing to inquire further into whether the documents described in the billing statements were responsive to the First and Second Requests and by subsequently denying production of such records on the basis that they represented minor billing items. *See id.*; *Chavez v. Lovelace Sandia Health Sys., Inc.*, 2008-NMCA-104, ¶ 25, 144 N.M. 578, 189 P.3d 711 ("A trial court abuses its discretion when it exercises its discretion based on a misunderstanding of the law."). We thus reverse the portion of the district court's order on in camera review pertaining to the documents described in the billing statements, and we remand to the district court to determine whether any such document is responsive to Filippi's First and Second Requests and subject to disclosure. We, however, leave to the district court how best to assess the County's compliance, and we decline to order the district court to implement specific in camera procedures, as requested by Filippi. *See, e.g.*, *Republican Party of N.M. v. N.M. Taxation & Revenue Dep't*, 2012-NMSC-026, ¶ 49, 283 P.3d 853 (stating that district courts should conduct in camera reviews "where appropriate" when evaluating claims of privilege in IPRA cases).

## B.     Attorney Client Privilege and Work Product Protection

**{16}**     We briefly address Filippi's contentions that the County waived attorney client privilege or work product protection of certain documents or communications. We pause to note that Filippi's arguments here are difficult to comprehend; her brief in chief makes general claims of error but does little to explicate them. We have endeavored to discern and address Filippi's arguments as best we can. From what we can tell, Filippi first asks that we conclude the County waived any privilege that may exist as to documents described in the billing statements that are responsive to her First and Second Requests. Although Filippi argues that the billing statements indicate on their face that communications were made to third parties, suggesting attorney client privilege was

waived, she fails to identify any third parties who received the communications or otherwise elaborate on her assertion of waiver. We decline to review this undeveloped claim of error. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 (rejecting the appellant's "surface presentation[]" of an issue and stating that "[w]e will not search the record for facts, arguments, and rulings in order to support generalized arguments"); *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").

{17}   Next, to the extent Filippi contends the district court erred in its determination that the documents listed in the privilege log were properly withheld as attorney client privileged or protected work product, we decline to address this argument as well. This argument—coming as it did in Filippi's summary of proceedings and without analysis, explication, or citation to authority—was not presented with sufficient clarity in the brief in chief either to alert the County that Filippi intended to raise such an issue on appeal or to warrant our review. *See Muse*, 2009-NMCA-003, ¶ 72; *Headley*, 2005-NMCA-045, ¶ 15. And although Filippi raises this issue in her reply brief, we generally do not consider such arguments. *See Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 29, 127 N.M. 282, 980 P.2d 65 (noting that "the general rule is that we do not address issues raised for the first time in a reply brief"). But even if we were inclined to entertain Filippi's argument notwithstanding the above, the argument is undeveloped. Filippi summarily contends that the County waived the attorney client privilege and work product protection by failing to assert any privilege in response to the First Request and by disclosing communications to third parties, but she fails to elaborate on these contentions. Filippi does not explain which entries in the privilege log she contends were responsive to the First Request. Likewise, she again fails to identify any third parties who received the communications listed in the privilege log. We therefore decline to address as undeveloped Filippi's claim that the district court erred in its determination that the documents listed in the privilege log were properly withheld. *See Muse*, 2009-NMCA-003, ¶ 72; *Headley*, 2005-NMCA-045, ¶ 15.

## II.      Claims Against the Attorneys

{18}   Filippi argues the district court erred in dismissing her claims against the Attorneys under IPRA and for common law access to records, deceit and/or collusion, professional negligence, and constructive trust. "A district court's decision to dismiss a case for failure to state a claim under Rule 1-012(B)(6) [NMRA] is reviewed de novo." *Walsh v. Montes*, 2017-NMCA-015, ¶ 6, 388 P.3d 262 (internal quotation marks and citation omitted). "On review, we accept all well-pleaded factual allegations in the complaint as true and resolve all doubts in favor of sufficiency of the complaint." *Id.* (internal quotation marks and citation omitted). "Dismissals under Rule 1-012(B)(6) are proper when the claim asserted is legally deficient." *Delfino v. Griffo*, 2011-NMSC-015, ¶ 9, 150 N.M. 97, 257 P.3d 917. For the reasons that follow, we conclude the district court properly dismissed all of Filippi's claims against the Attorneys.

## A.      IPRA Enforcement Action Against the Attorneys

**{19}** The Attorneys argued, and the district court agreed, that they could not be sued under IPRA because IPRA does not provide a cause of action against private entities. Relying on *Toomey*, 2012-NMCA-104, Filippi asserts the district court erred because, under the factors discussed in *Toomey*, the Attorneys were acting on behalf of the County. According to Filippi, therefore, the Attorneys are proper defendants in an action to enforce IPRA. We cannot agree.

**{20}** Filippi's reliance on *Toomey* is misplaced. The issue in *Toomey* was whether documents created by a private company on behalf of a public body were public records subject to inspection under IPRA. *Id.* ¶ 8 ("[T]he dispositive question is whether [the company's] recordings of the [c]ity meetings were made on behalf of the [c]ity so as to constitute public records within the meaning of IPRA."). That, however, is not the issue in this case. The issue presented here is whether the Attorneys are properly named as defendants in an IPRA enforcement action—something *Toomey* did not address. *See Fernandez v. Farmers Ins. Co. of Ariz.*, 1993-NMSC-035, ¶ 15, 115 N.M. 622, 857 P.2d 22 ("The general rule is that cases are not authority for propositions not considered." (internal quotation marks and citation omitted)).

**{21}** Our Supreme Court recently addressed this precise question—i.e., "who is the proper defendant in an IPRA enforcement action[?]" *Pacheco v. Hudson*, 2018-NMSC-022, ¶ 56, 415 P.3d 505. Relying on the plain language of IPRA, the Court's answer to this question was unambiguous: "The designated records custodian is the *only* official who is assigned IPRA compliance duties and is the *only* official who statutorily is subject to an action to enforce IPRA[.]" *Id.* ¶ 57 (emphases added) (internal quotation marks and citations omitted); *see also* § 14-2-7 (imposing duties of compliance with IPRA on a designated "custodian of public records"); § 14-2-11(C) (providing that the designated custodian "is subject to an action to enforce the provisions of [IPRA]"). We accordingly reject Filippi's insistence that, notwithstanding *Pacheco*, the Attorneys are proper defendants in her IPRA enforcement action,[3] and we affirm the district court's dismissal of Filippi's IPRA claims against the Attorneys.

## B.   Common Law Access to Records

**{22}** Notwithstanding her inability to bring an IPRA enforcement action against the Attorneys, Filippi maintains she has a common law right to access the Attorneys' communications and that the district court erred in dismissing her claim premised on that basis. As support, Filippi relies on *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978), in which the United States Supreme Court stated that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." Whether there exists in New Mexico some common law right of access to public records that falls outside the

---

3Filippi does not contend that the County designated the Attorneys as the custodian of its public records during the relevant timeframe. Indeed, Filippi directed her IPRA requests to either the County Manager or the County Clerk, who then responded to her requests. *See* § 14-2-7(A), (B) (providing that the designated records custodian shall receive and respond to requests); *cf. Corizon Health*, 2020-NMCA-014, ¶ 3 (discussing how a private entity had been designated as the custodian of certain records).

contours of IPRA is, of course, a matter not addressed by *Nixon*. But even if we assume there is such a right, *but see Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 18, 137 N.M. 26, 106 P.3d 1273 (stating that Section 14-2-5 "essentially codified th[e] right" discussed in *Nixon*), Filippi has directed us to no authority for the proposition that such a right allows a party to sue a private entity in order to access those public records. We therefore assume that no such authority exists and, accordingly, reject Filippi's claim. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (explaining that where a party cites no authority to support an argument, we may assume no such authority exists); *see also Nixon*, 435 U.S. at 597 n.7 (citing cases, supporting the existence of a common law right of access to public records in courts throughout the country, in which public bodies or officials, not private entities or individuals, were sued).

## C. Attorney Deceit or Collusion

**{23}** Filippi next argues the district court erred in dismissing her claim under the attorney deceit statute, NMSA 1978, § 36-2-17 (1909), and her accompanying request for treble damages. Section 36-2-17 provides, in relevant part, that "[i]f an attorney is guilty of deceit or collusion or consents thereto with intent to deceive the court, judge or party, he shall forfeit to the injured party, treble damages to be recovered in a civil action[.]" Among other arguments for affirmance, the Attorneys contend that Section 36-2-17 does not create an independent cause of action; rather, they assert, Section 36-2-17 merely provides for treble damages after a plaintiff prevails on an underlying fraud claim, a claim they further assert Filippi has failed to state. In response, Filippi does not contend that she has stated a claim for fraud; she instead argues that "[d]eceit is a separate and distinct cause of action [from fraud] in New Mexico" and summarily asserts she has stated a claim for deceit. Filippi fails to persuade us that the tort of deceit is meaningfully distinguishable from common law fraud or that her complaint has stated a claim for deceit or fraud, however that tort is styled. We explain.

**{24}** New Mexico case law appears to refer to the torts of "deceit" and "fraud" interchangeably. For example, in *Maxey v. Quintana*, 1972-NMCA-069, 84 N.M. 38, 499 P.2d 356, this Court repeatedly referred to the tort of "fraud or deceit." *Id.* ¶¶ 9, 12-17. Other cases refer to the tort as "fraud and deceit." *See Hockett v. Winks*, 1971-NMSC-059, ¶ 2, 82 N.M. 597, 485 P.2d 353, *overruled on other grounds by Duke City Lumber Co. v. Terrel*, 1975-NMSC-041, 88 N.M. 299, 540 P.2d 229. Furthermore, our Supreme Court has applied to the tort of deceit the same elements as common law fraud. *See Hockett*, 1971-NMSC-059, ¶¶ 2-3 (providing that the plaintiff has the burden of establishing the essential elements of the tort of deceit by clear and convincing evidence and citing *Sauter v. St. Michael's College*, 1962-NMSC-107, 70 N.M. 380, 374 P.2d 134, a fraud case, for those elements); *see also Sauter*, 1962-NMSC-107, ¶ 9 (listing the essential elements of fraud as "a representation was made as a statement of fact which was untrue and known to be untrue by the party making it, or else recklessly made"; "it was made with intent to deceive and for the purpose of inducing the other party to act upon it"; and "the other party did in fact rely on it and was induced thereby to

act to his injury or damage"); 37 Am. Jur. 2d *Fraud and Deceit* § 23 (2020) (listing same essential elements for deceit).

**{25}** For her contention that the tort of "deceit" differs from "fraud," Filippi cites *Everett v. Gilliland*, 1943-NMSC-030, 47 N.M. 269, 141 P.2d 326. *Everett* concluded that, in appropriate circumstances, the tort of deceit or fraud[4] may be premised on an omission and does not require an affirmative misrepresentation. *Id.* ¶ 12 (holding that "[s]ilence or no disclosure where there is a duty to speak will alone, and unaccompanied by any element of active fraud[,] be sufficient to ground an action for deceit" and "a charge of fraud is maintainable where a party who knows material facts is under a duty . . . to speak and disclose his information, but remains silent" (internal quotation marks and citation omitted)). We take no issue here with the contention in *Everett* that deceit or fraud may be predicated, in certain circumstances, on an omission. *See McElhannon v. Ford*, 2003-NMCA-091, ¶ 9, 134 N.M. 124, 73 P.3d 827 (recognizing a claim for fraudulent nondisclosure). Even so, this says nothing about the applicability of the other elements of deceit or fraud. And *Everett* does not appear to relax these elements, nor does Filippi argue that they are inapplicable to her claim. Turning to these elements, Filippi's claim falters.

**{26}** To state a claim for deceit or fraud, whether based on a misrepresentation or omission, a plaintiff must, among other things, allege an intent to deceive by the wrongdoer and reliance by the plaintiff. *See Encinias v. Whitener Law Firm, P.A.*, 2013-NMSC-045, ¶ 22, 310 P.3d 611 (setting out elements of fraudulent misrepresentation, whether by representation or omission); *see also Hockett*, 1971-NMSC-059, ¶¶ 2-3; *Sauter*, 1962-NMSC-107, ¶ 9; 37 Am. Jur. 2d *Fraud and Deceit* § 23. Filippi asserts that the allegations in her complaint, if taken as true, state a claim for deceit and refers us to paragraphs 49, 52, and 54 (and related attachments) of her complaint. But, as the Attorneys observe, the cited portions of the complaint state only that: (1) the Attorneys were serving as legal counsel to the County in a quasi-judicial hearing (the zoning appeal) at the time Filippi made her First Request; (2) the Attorneys told Filippi that all communications by the Attorneys or the County regarding the zoning appeal would be sent to both Filippi and JBM; (3) the Attorneys declined Filippi's request that they recuse themselves from assisting the County at the hearing; and (4) had Filippi not submitted her Second Request, she would not have determined that documents responsive to her First Request had been withheld. Nowhere in these allegations does Filippi allege that the Attorneys acted with an intent to mislead or deceive her. *See Maxey*, 1972-NMCA-069, ¶ 9 ("To recover damages for fraud or deceit, the misrepresentation must be knowingly or recklessly made with intent to deceive."). And while we observe that Filippi makes such an allegation in another portion of her complaint not referenced in her brief in chief, Filippi nowhere alleges reliance in her complaint. *See Saylor v. Valles*, 2003-NMCA-037, ¶ 22, 133 N.M. 432, 63 P.3d 1152 (affirming the dismissal of a fraud claim where the plaintiffs "fail[ed] to plead reliance, an essential element of fraud"). Because

---

[4]As with the cases cited above, *Everett* refers interchangeably to the tort of deceit and/or fraud. *See, e.g.*, *id.* ¶ 1 ("action of fraud and deceit"); *id.* ¶ 12 ("charge of fraud"; "action for deceit"; "fraud and deceit" (internal quotation marks and citations omitted)).

Filippi's complaint does not allege all the elements constituting deceit or fraud, we affirm the district court's dismissal of her claim brought under Section 36-2-17.[5]

## D.    Duty of Care to Nonclients

**{27}**    Citing various allegations throughout her complaint, Filippi contends she stated a professional negligence claim against the Attorneys under Section 51(2) of the Restatement (Third) of the Law Governing Lawyers (Am. Law Inst. 2000). As acknowledged by Filippi, our courts have not had occasion to decide whether New Mexico follows this portion of the Restatement (Third) of the Law Governing Lawyers. We decline to decide this issue today because, even if we were to recognize a claim under Section 51(2) of the Restatement (Third) of the Law Governing Lawyers, Filippi fails to state such a claim.

**{28}**    The Restatement provides, in relevant part, that a lawyer has a duty of care to a nonclient when "the lawyer . . . invites the nonclient to rely on the lawyer's opinion or provision of other legal services, and the nonclient so relies." Restatement (Third) of the Law Governing Lawyers § 51(2)(a). Under this portion of the Restatement, "the nonclient has a claim against the lawyer if the lawyer's negligence with respect to the opinion or other legal services causes injury to the nonclient."  Restatement (Third) of the Law Governing Lawyers § 51 cmt. e. As examples of the type of reliance on an "opinion or other legal services" contemplated, the Restatement illustrates that liability may be found where: a lawyer for a seller of personal property provides an opinion letter regarding the absence of liens to a buyer; a lawyer for a borrower provides an opinion letter to a lender knowing that the lender will use the opinion to solicit the participation of other lenders; or a lawyer for a seller offers to record the deed of real property for the buyer. *Id.*

**{29}**    The allegations of the complaint to which Filippi cites do not support a claim against the Attorneys under Section 51(2) of the Restatement (Third) of the Law Governing Lawyers. The referenced paragraphs (and related attachments) allege that the Attorneys: (1) failed to include attachments to the emails that were responsive to the First Request; (2) failed to provide all documents responsive to her First and Second Requests; (3) told Filippi that all communications by the Attorneys or the County regarding the zoning appeal would be sent to both Filippi and JBM; and (4) declined Filippi's request that they recuse themselves from assisting the County at the zoning appeal. At most, Filippi alleges the Attorneys failed to follow through on their word after telling her they would ensure she would be copied on all communications with JBM. Critically missing is any allegation that the Attorneys invited Filippi to rely on their legal services or opinions to her detriment, as those terms are illustrated in the Restatement. *See* Restatement (Third) of the Law Governing Lawyers § 51(2) cmt. e. Accordingly, we find no error in the district court's dismissal of Filippi's claim for professional negligence

---

5Filippi also contends she stated a claim for "collusion" under Section 36-2-17, notwithstanding her failure to plead the tort of deceit or fraud. In support, Filippi, without any argument or explication, cites only the dictionary definition of the word "collusion." We decline to address this unclear and undeveloped argument. *See Muse*, 2009-NMCA-003, ¶ 72; *Headley*, 2005-NMCA-045, ¶ 15.

against the Attorneys under Section 51(2) of the Restatement (Third) of the Law Governing Lawyers.

## E.     Constructive Trust

{30}    Finally, Filippi asserts that the district court erred in denying her request for the imposition of a constructive trust against the Attorneys. "The imposition of a constructive trust is an equitable remedy, and as such is within the broad discretion of the district court." *In re Estate of Duran*, 2003-NMSC-008, ¶ 35, 133 N.M. 553, 66 P.3d 326. Accordingly, we review the district court's decision not to impose a constructive trust for an abuse of discretion. *See State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 28, 329 P.3d 658 ("The grant or denial of equitable remedies is reviewed for abuse of discretion."). "A constructive trust will be imposed to prevent the unjust enrichment that would result if the person having the property were permitted to retain it." *Duran*, 2003-NMSC-008, ¶ 34 (internal quotation marks and citation omitted). "Circumstances such as fraud, constructive fraud, duress, undue influence, breach of a fiduciary duty, or similar wrongful conduct may give rise to such a trust." *Id.* (internal quotation marks and citation omitted). Filippi asserts she alleged such conduct, based on her allegations sounding in deceit and collusion pursuant to Section 36-2-17. She also asserts that IPRA provides for the remedy of a constructive trust. *See* § 14-2-12(B) ("A district court may issue a writ of mandamus or order an injunction or other appropriate remedy to enforce the provisions of [IPRA]."). Besides her failure to explain how the Attorneys would be unjustly enriched by retaining the documents at issue, we already have rejected Filippi's contentions that she stated a claim against the Attorneys under Section 36-2-17 or IPRA. We therefore conclude that the district court did not abuse its discretion in refusing to impose a constructive trust.

## CONCLUSION

{31}    With respect to Filippi's claims against the County, we hold that the district court erred by not reviewing the additional documents identified by Filippi to determine whether any of them are responsive to her First and Second Requests and subject to disclosure. We accordingly reverse the order on in camera review in part and remand for further proceedings consistent with this opinion. We otherwise affirm the remaining portion of the order on in camera review. Finally, we affirm the district court's dismissal of all claims against the Attorneys.

{32}    **IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**